[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14192
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 14, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00335-CAP-RGV-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETER J. GAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 14, 2011)

Before TJOFLAT, KRAVITCH and BLACK, Circuit Judges.

PER CURIAM:

A Northern District of Georgia jury found Peter Gay guilty of robbery of

United States property, in violation of 18 U.S.C. § 2114(a), and the district court

sentenced him to a prison term of 120 months. He now appeals his conviction. We affirm.

We first recount how the robbery took place—what was presented to the jury—then take up Gay's arguments for the reversal of his conviction and a new trial.

## I.

At approximately 10:30 a.m. on September 16, 2008, Melissa Spratling, a postal employee with the Riverdale Post Office in Atlanta, drove to a Bank of America to obtain change for the postal clerks. When she arrived at the Bank, she parked in the back of the bank and exited her car, carrying a gray Bank of America bank bag under he arm like "a football." The bag contained approximately $850 in postal funds. As she approached a ramp before the bank's rear door, she noticed an African-American male to her left. Spratling thought that the man was going to open the door for her, but, because she did not want him to do so, she stepped forward to open the door herself. She took a quick step to open the door and the man "grabbed" the bank bag from her and took off running. Spratling described the man as 5'10" and dark complected with a clean-shaven face and hair. She noted that he had broad shoulders and a "big neck." He looked like a regular customer of the post office named Prince Russo, but that the robber was not

2

Russo. When she first saw the robber, Spratling was three feet away, but when he grabbed the bag from her, she was only six to eight inches from him and she looked at his face. As the robber was running away, Mandy Greenway pulled into the bank parking lot in order to make a deposit on behalf of her business. As she drove through the parking lot, she heard a "commotion" and saw a man "run across [her] car with a bank bag in his hand . . . ." She described the person as a tall, African-American male, dressed in all black. Greenway did not see the robber's face. She described the bag that the robber carried as a gray Bank of America bank bag. Greenway made a u-turn in the bank parking lot and followed the robber in her vehicle. The robber ran down the side of the road, and she stayed behind him in her vehicle. She watched as he turned into an adjacent parking lot and entered the passenger side of another vehicle. She described the vehicle as a dark gray or pewter, four-door, older model Honda Accord with tinted windows. Greenway explained that she knew that the vehicle was an older model based on her prior ownership of Honda Accords. At that point, the driver of the vehicle, an African-American male, pointed at Greenway, and she returned to the bank.

Jeffrey Adkins, a federal agent with the United States Postal Inspection Service, responded to the scene of the robbery. There, he interviewed

Spratling, who described the robber as indicated above. He met with Greenway the following day, who described the getaway vehicle as a pre-1997 model Honda Accord, probably a 1990-1993 model, based on the body style and the head lights. On April 3, 2009, Agent Adkins showed Spratling a photographic array of six African-American males, which appeared to be of the same size, age, and complexion, and had similar haircuts. One of the photos was Peter Gay's. Spratling selected his photo, stating "this is the one. This is the man that robbed me." Adkins asked her if she was certain. She said, "I am a hundred percent certain."

Gay was on parole at the time of the robbery. On July 20, 2009, his parole officer, Mandy Malinofksy, Agent Atkins and other law enforcement officers, went to Gay's residence. Malinofksy searched Gay's vehicles, a Mercedes and a four-door 1992 Honda Accord with tinted windows. From the Mercedes, she recovered a gray Bank of America bank bag. In the residence, she found $3,000 in cash, "wrapped in rubber bands," in the pocket of a suit jacket in Gay's bedroom.

## II.

Gay contends that the district court abused its discretion in overruling his objections to four pieces of evidence: (1) extrinsic evidence of his participation in a robbery crew; his status as a parolee; his twelve-year-old convictions for prior

4

similar crimes; and Spratling's pretrial identification of him from the photo array Agent Atkins provided. In addition, he contends that the court abused its discretion by failing to instruct the jury on a lesser included offense.[1]

## A.

Gay argues that the district court abused its discretion in admitting the testimony of Armard Norrington that Gay was part of a robbery crew that committed twenty robberies from 2006 through 2008. In addition to this, Norrington related that he had a conversation with Gay in September 2008, in which Gay related the details of a recent robbery, including how he "knocked the lady down" and "snatched the bag."

Although extrinsic evidence of other crimes committed by the defendant is generally not permitted by Federal Rule of Evidence 404(b), evidence of uncharged criminal activity is not extrinsic under the rule if it is "inextricably intertwined with the evidence regarding the charged offense." *United States v. Jimenez*, 224 F.3d 1243, 1249 (11th Cir. 2006). Evidence is inextricably intertwined when it tends to corroborate, explain, or provide necessary context for

---

[1] Lastly, Gay contends that the magistrate judge erred by denying him funds with which to hire an expert to testify on the issue of eyewitness identification testimony. Gay did not appeal the magistrate judge's ruling; hence, the district court did not consider it. Because the district court did not consider this order, we lack jurisdiction to review it. *See United States v. Brown*, 441 F.3d 1330, 1352 (11th Cir. 2006).

evidence regarding the charged offense. *See id*. at 1250. To determine admissibility of clearly extrinsic, prior bad acts evidence pursuant to Rule 404(b), we apply a three-part test. *United States v. Ellisor*, 522 F.3d 1255, 1267 (11ᵗʰ Cir. 2008). First, the evidence must be relevant to an issue other than the defendant's character. *Id*. Second, the evidence's probative value must not be substantially outweighed by its undue prejudice. *Id*. And finally, the government must offer sufficient proof so that the jury could find that defendant committed the act. *Id*.

When considering the second prong of the test, we consider factors such as "the strength of the government's case on the [contested] issue [], the overall similarity of the extrinsic and charged offenses, the amount of time separating the extrinsic and charged offenses, and whether it appeared at the commencement of trial that the defendant would contest the issue [for which the government offers the evidence]." *United States v. Mitchell*, 666 F.2d 1385, 1390 (11th Cir. 1982). Though a substantial passage of time from the extrinsic conduct to the charged offense tends to lessen the prior act's probative value, where a defendant has spent much of that time incarcerated, the significance of a lengthy period is diminished. *See United States v. LeCroy*, 441 F.3d 914, 926 (11th Cir. 2006).

In this case, the district court did not abuse its discretion by admitting Norrington's testimony concerning Gay's participation in a robbery crew, or the

evidence about Gay's parolee status, as both were inextricably intertwined with evidence concerning the charged offense. Norrington testified to the fact that he overheard a call from Gay discussing details of the charged robbery. In addition, Norrington stated that Gay gave him money, which Norrington assumed came from the robbery. Both of these statements are explained and corroborated when told in the context of the robbery crew's activities. Additionally, the parole officer's knowledge of Gay's financial status could only be logically explained by her status as Gay's parol officer.

Concerning Gay's prior convictions, the district court did not abuse its discretion by admitting the evidence under Rule 404(b). First, both of the prior convictions were for snatch and run robberies that occurred just outside of banks. In addition, in both cases the robber grabbed a money bag out from under the victim's arm and ran to a waiting getaway car. Thus, the offenses were sufficiently similar to prove identity (which Gay vigorously contested; someone else committed the robbery). Second, the Government submitted certified copies of the prior convictions, and hence offered sufficient proof for a jury to find that Gay committed these acts.

The court also acted within its discretion in finding that the second prong of the test, that the probative value was not outweighed by unfair prejudice, was

satisfied. Though the Government submitted a substantial amount of other evidence to prove the identity of the robber, the entire case hinged on this issue, as Gay adamantly denied participation in the charged offense. In addition, as discussed *supra*, the offenses were similar. Finally, though the prior robberies occurred twelve years before the charged offense, Gay spent a substantial amount of this time in prison, and the significance of this lengthy period of time is thereby diminished. Therefore, the court did not abuse its discretion by determining that the probative value of the twelve-year-old convictions was not substantially outweighed by the danger of unfair prejudice. *See United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir.1995) (upholding admission of Rule 404(b) evidence where the prior uncharged transactions occurred fifteen years before the charged offense). Moreover, any prejudice that arose from admission of this evidence was cured by the limiting instructions that the court gave at the introduction of this evidence and again in the final jury charge.

B.

In reviewing a district court's admission of a witness' pretrial identification of the defendant—here Spratling's identification of Gay via a photo array—we conduct a two-step analysis, first considering whether the photo array procedure was unduly suggestive. *Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988).

Only if we conclude that the procedure was unduly suggestive do we reach the second step of the analysis, and consider whether the identification was nevertheless reliable. *See id.* at 895-97.

In this case, the district court did not clearly err in finding that the pretrial identification procedure was not impermissibly suggestive. Gay alleges that his photo's background and his complexion are significantly darker than the other pictures in the photo array. He also notes that whereas he was wearing an open collared v-neck shirt, four of the other individuals wore t-shirts, and the fifth had on a polo, v-neck, open collared shirt. The district court's finding that these differences were insignificant, and did not affect the suggestiveness of the procedure, was not clearly erroneous.

## C.

The district court did not abuse its discretion by refusing to give the lesser-included-offense jury charge Gay requested because Gay's defense was misidentification. If the jury believed this defense, it would have acquitted Gay of the offense for which he requested a charge. *United States v. Brown*, 26 F.3d 119, 120 (11th Cir. 1994) ("When a defendant relies on an exculpatory defense that, if believed, would lead to acquittals on both the greater and lesser charges, it is no abuse of discretion to refuse to instruct the jury on a lesser included offense.")

9

In sum, we find no basis for reversing Gay's conviction.

AFFIRMED.