In the Supreme Court of Georgia

Decided: July 5, 2016

S16A0377. MYERS v. THE STATE.

BENHAM, Justice.

Appellant Dwayne Tavares Myers appeals his convictions for the felony murder of Edward Davidson and related crimes he committed with his confederates Justin Baughns and Anthony Fuller.[1] We affirm for the reasons set forth below.

---

[1] The crimes at issue occurred on November 24, 2012, November 26, 2012, and November 27, 2012. On March 5, 2013, an Athens-Clarke County grand jury indicted appellant, along with Anthony Fuller and Justin Baughns, on charges of malice murder, felony murder (4 counts), burglary in the first degree of Davidson, aggravated assault of Davidson, possession of a firearm during the commission of a crime (2 counts), burglary in the first degree of Larry Fredericks, burglary in the first degree of Katherine DeGiorgi, and possession of a firearm by a convicted felon. Appellant was tried alone from August 4, 2014 to August 13, 2014, the jury finding him guilty of all charges except for malice murder. On August 15, 2014, the trial court treated appellant as a recidivist and sentenced him to life without parole on one count of felony murder (burglary of Davidson) and consecutive or concurrent terms of years for the counts that were not merged or vacated for sentencing purposes. On August 27, 2014, appellant filed a motion for new trial. The trial court held a hearing on the motion on August 20, 2015 and denied the motion on August 21, 2015. Appellant filed a notice of appeal on August 31, 2015, and, upon receipt of the record, the case was docketed to the January 2016 Term of this Court and submitted for a decision to be made on the briefs.

1. Appellant contends the evidence was insufficient to convict him for a burglary that took place at 502 Rust Wood Drive in Athens-Clarke County on or about November 26, 2012.

(a) Viewing the evidence in a light most favorable to upholding the jury's verdicts, the evidence showed that late on November 26, 2012, and continuing into the midnight hour of November 27, 2012, three men entered the home of Charlotte and Edward Davidson located at 400 Jefferson River Road in Athens-Clarke County. During the incident, Charlotte hid in her bedroom, but her husband Edward confronted the intruders and was shot. Edward went into cardiac arrest on the way to the hospital and died of five gunshot wounds. When police first arrived at the home, Edward was found clutching a kitchen knife and a tire iron in his hands. Fuller's blood DNA was later determined to be on the knife and on the tire iron. The door leading from the Davidsons' garage to their kitchen had been kicked in and there were pry marks on the door consistent with the tire iron. Because authorities initially could not find any leads as to who would want to harm the victim, they concluded that the murder was a burglary "gone wrong" and began looking into unsolved burglaries in the area over a time span of about a month and a half leading up to the murder, as well as canvassing the neighborhood for information.

2

In the course of their investigation, the police determined that during a two-week period in November 2012, appellant and his cohorts Fuller, who was a juvenile at the time, and Baughns participated in a series of at least eleven burglaries in Athens-Clarke County. The perpetrators would go out at night, kick in and/or pry open the doors and/or windows of residences, and steal items such as flat screen televisions, gaming systems, and other items that could be sold easily for cash at a pawn shop. The evidence showed that Baughns would typically drive Fuller and/or appellant to residences within a few miles' radius of where the Davidson murder took place and where Myers and Fuller lived;[2] Fuller[3] and/or appellant would break into the houses and steal the items; and Baughns would later sell the stolen items at a local pawn shop.[4]

In addition to the Davidson murder, Appellant was linked directly to at least two of the ten remaining burglaries.[5] The first occurred in the early morning hours of November 24, 2012, when a man kicked in the door of

---

[2] Appellant and Fuller lived across the street from each other on Lavender Road in Athens-Clarke County. Neither Appellant nor Fuller had a driver's license or a vehicle.

[3] Fuller's fingerprints were found at many of the burgled homes.

[4] A civilian analyst for the Athens Clarke-County police department testified that he searched a database of pawn shop transactions and determined that Baughns made at least eight pawn shop transactions between November 13, 2012 and November 24, 2012.

[5] These are the two burglaries for which appellant was indicted and convicted in addition to the Davidson murder. Appellant was not indicted for any other burglaries connected in the crime spree.

Katherine DeGiorgi's home at 263 Arch Street in Athens-Clarke County and entered her bedroom, but fled when she discovered him. A surveillance camera recorded the man breaking into the residence and his flight from the scene by entering a car driven by someone else. Authorities eventually determined that the man in the surveillance tape was appellant and the car he entered appeared to be the 1995 Geo Prizm owned by Baughns.

At about 6:30 a.m. on November 27, 2012, Larry Fredericks, who lived at 502 Rust Wood Drive, came home from work[6] to find his front and back doors open and his front porch light broken. The front door had been kicked in and had pry marks on it as if someone had tried to open it with a flat tool. Fredericks discovered that several items were missing, including a flat screen television, a motorcycle helmet, and a Kal-Tec .32 handgun with six rounds of ammunition. As to the hand gun, Fredericks advised the authorities that he had used it for target practice and was able to direct them to the area where he would practice. The authorities were able to recover a projectile from the target practice area. The ballistics expert testified that the .32 projectile recovered from the target practice area was fired from the same gun as the .32 projectiles

_____

[6] Fredericks had been at work since 6 p.m. the prior evening.

extracted from Edward Davidson's body. The authorities were also able to lift a shoe impression from the doors of the house. Although inconclusive, a forensic expert testified the shoe impression taken from the scene featured the same pattern as the shoes appellant was wearing when arrested.

About two weeks after these incidents, an officer stopped appellant on the street because the officer believed appellant looked like the person on the video of the burglary at 263 Arch Street.[7] In December 2012, appellant was arrested for the Arch Street robbery.[8]

Authorities also received information about appellant's involvement in the Davidson murder from two witnesses who came forward during the investigation of the Davidson murder. Marco Ellison, who knew appellant from a previous stay in jail and who also knew Baughns, told authorities and testified at trial that, sometime after the Davidson shooting, appellant had attempted to sell him the .32 caliber gun allegedly used in that incident.[9] Police thereafter put a recording device on Ellison and had Ellison record a

---

[7] Authorities had shared the video with several police officers in hopes that the perpetrator seen therein would eventually be identified.

[8] Fuller and Baughns were arrested before appellant on charges other than the Davidson murder. Eventually all three of them were charged with the Davidson murder while in custody.

[9] Ellison also told police that he refused to buy the gun and that he was mad that appellant was trying to sell him a "dirty" gun.

5

conversation with appellant. In the recorded conversation, appellant told Ellison that Baughns had been driving on the night of the Davidson murder, that appellant was supposed to be the lookout during the burglary, that a "young dude" (Fuller) had done the shooting, that the group intended to steal flat screen televisions, and that appellant disposed of the gun.[10] Maurice Mitchell, who was appellant's cellmate after appellant's arrest, testified that appellant told him a similar story about the Davidson burglary, but appellant added more detail including admitting that he had kicked in the door of the Davidson residence, confirming that the victim had a knife, confirming that the victim struggled with the "juvenile" (Fuller) prior to the shooting, confirming that the weapon used was a .32 caliber gun, and admitting that he had thrown the gun away in "some water." At the time Mitchell came forward with this information, the police had not released any information to the public about the knife or what caliber handgun was used in the shooting.

(b) Based on the evidence summarized above, a juror could find beyond a reasonable doubt that appellant participated in the burglary at 502 Rust Wood Drive. See <u>Jackson v. Virginia</u>, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560)

---

[10] Ellison testified appellant initially told him he had sold the gun, but then also told him he had thrown the gun away.

(1979). Specifically, Appellant made admissions linking himself to the Davidson murder which transpired shortly after the 502 Rust Wood Drive burglary. The evidence showed the gun used to kill Davidson was the same gun stolen from 502 Rust Wood Drive and was the same gun appellant admittedly threw away. The pattern on the soles of the shoes appellant was wearing at the time he was arrested was consistent with the shoe impression authorities collected from a door that was kicked in at 502 Rust Wood Drive. Also, a few days before the burglary at 502 Rust Wood Drive and the murder at 400 Jefferson River Road, appellant was seen on video kicking in the door at 263 Arch Street and entering the home without permission. Appellant's actions during the Arch Street burglary were consistent with the modus operandi of the burglary at 502 Rust Wood Drive, as well as the physical evidence at that location (i.e., the shoe impression matching appellant's shoes). Appellant also admitted to kicking in the door at the Davidson residence. Based on this evidence, a factfinder could reasonably conclude that appellant participated in the burglary at 502 Rust Wood Drive. As such, appellant's enumeration of error challenging the sufficiency of the evidence as to this burglary is without merit.

(c) The evidence was otherwise sufficient to convict appellant of the crimes for which he was charged. Id.

2. Appellant alleges the trial court erred when it gave a charge on conspiracy over his objection.[11] According to appellant, there was no evidence that he was ever part of a conspiracy with Baughns and Fuller; however, the evidence summarized herein at Division 1 (a), supra, belies this assertion. The State introduced ample evidence that appellant was involved in a conspiracy to burgle homes in Athens-Clarke County. Some of this evidence included evidence of burglaries for which appellant was not indicted.[12] The cumulative evidence showed that appellant, Baughns, and Fuller robbed houses for a period of two weeks in November 2012. The robberies followed a "common design" wherein Baughns served as the driver and sold the stolen items, while appellant and/or Fuller did the breaking and entering and stole the items. See Grissom v. State, 296 Ga. 406 (1) (768 SE2d 494) (2015) ("'Conduct which discloses a common design, even without proof of an express agreement between the parties, may establish a conspiracy. [Cit.]'"). The burglaries

---

[11] The issue regarding the charge on conspiracy was properly preserved for appellate review.
[12] Although appellant objected at trial to the admissibility of evidence of the unindicted burglaries, he does not challenge the admissibility of this evidence on appeal.

shared common characteristics—they occurred at night, the doors or windows of the homes were typically kicked in and/or pried open with a flat tool much like the tire iron found at the Davidson residence, the front lights were broken to thwart detection, and the items stolen were primarily flat screen televisions and other items that could be easily sold for cash at a pawn shop. The fact that appellant was not indicted for conspiracy did not preclude giving a charge on conspiracy. Holmes v. State, 272 Ga. 517 (6) (529 SE2d 879) (2000) ("It is not error to charge on the subject of conspiracy when the evidence tends to show a conspiracy, even if a conspiracy is not alleged in the indictment."). Evidence of an unindicted conspiracy need only be slight to authorize a trial court to give a conspiracy charge. See Pyatt v. State, __ Ga. __ (4) (784 SE2d 759) (2016). Also, appellant need not have participated in every burglary for which his cohorts were indicted to be a part of the conspiracy. See McCleod v. State, 297 Ga. 99 (1) (772 SE2d 641) (2015) (a co-conspirator is criminally responsible for the collateral acts of the other co-conspirators that are a part of the conspiracy); Hicks v. State, 295 Ga. 268 (1) (759 SE2d 509) (2014) (co-conspirators are jointly responsible for any act done by any one of them in keeping with the agreed common plan). Accordingly, the trial court did not err when it instructed the jury on conspiracy because such charge was

authorized by the evidence. Holmes v. State, 272 Ga. at 519. See also Belsar v. State, 276 Ga. 261 (2) (577 SE2d 569) (2003).

3. Finally, appellant complains the trial court erred when it gave a charge on fingerprint evidence because the fingerprint evidence only concerned appellant's cohort Fuller. Since appellant failed to raise any objection to the fingerprint charge in the trial court, the giving of the charge may only be reviewed for plain error. See OCGA § 17-8-58 (b). Plain error review requires this Court to "consider 'whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings.'[Cit.]"). Givens v. State, 294 Ga. 264 (2) (751 SE2d 778) (2013). Here, there is no contention that the fingerprint charge was erroneous. Rather, appellant argues the charge misled or confused the jury because the fingerprint evidence was unrelated to appellant and concerned burglaries for which appellant was not indicted. We disagree that this charge was misleading or created confusion. The fingerprint evidence placed Fuller at numerous burglary scenes and was relevant to show the progression of law enforcement's investigation into the Davidson murder and the revelation that the incident was not isolated, but rather was part of a larger conspiracy between Baughns, Fuller, and appellant to commit burglaries in the surrounding community. As

10

such, the trial court was authorized to give the charge.  There was no plain error.

Judgment affirmed.  All the Justices concur.