**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**April 19, 2017**

# In the Court of Appeals of Georgia

A17A0459. SANCHEZ-VILLA v. THE STATE.

BETHEL, Judge.

Felipe Sanchez-Villa appeals from his conviction of one count of trafficking in cocaine pursuant to OCGA § 16-13-31(a)(1)(C), for which he was sentenced to twenty-five years imprisonment and ordered to pay a one million dollar fine. On appeal, he contends that the trial court erred by permitting the State to introduce evidence from a United States Drug Enforcement Administration (DEA) investigation of Sanchez-Villa. The evidence included testimony from a DEA agent regarding the agency's surveillance of Sanchez-Villa for over a year prior to his arrest and a recording of a conversation involving Sanchez-Villa that occurred almost a month prior to his arrest on the cocaine trafficking charge. Sanchez-Villa also contends that the trial court erred by not instructing the jury on an "equal access"

defense and that it erred in instructing the jury as to conspiracy. While we affirm the trial court's rulings in regard to jury instructions for equal access and conspiracy, we find that the trial court abused its discretion in admitting the evidence of the DEA investigation as "intrinsic" evidence of the charged trafficking offense. Because we further find this error was harmful, we vacate Sanchez-Villa's conviction and remand this matter for a new trial consistent with this opinion.

On appeal, the defendant "is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict." *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014) (citations omitted).

So viewed, on April 8, 2014, the DeKalb County High Intensity Drug Trafficking Area Task Force (the "Task Force") received a tip from a confidential informant (CI) indicating that a drug transaction would take place that evening at a particular gas station around 10:00 pm. The CI indicated that a suspect (who he identified as "Cuarenta") would arrive in a gray Honda Accord and that he would meet someone driving a black Lincoln.

A Honda matching that description arrived after Task Force officers began monitoring the area, and it was joined minutes later by a black Lincoln. The driver of

the Lincoln then exited the vehicle, approached the Honda, and began speaking through its driver's side window.

The man returned soon after to the Lincoln, and the Lincoln drove off. The Honda followed the Lincoln, and Task Force officers followed both vehicles until they parked in front of a restaurant close by. An officer observed the driver of the Lincoln remove a "weighted down" duffel bag from the Lincoln's trunk and place it in the back seat of the Honda. The man then returned to the Lincoln and drove off.

Several minutes later, the Honda drove away. The Task Force officers began following the Honda. They then instructed an officer from the DeKalb County Police Department (who was not part of the Task Force) to look for the Honda, giving a description. Soon after, the DeKalb police officer encountered the Honda speeding and pulled it over.

After backup arrived, the officer approached the driver, later identified as Sanchez-Villa. He saw that the Honda was equipped with special hand controls and noted that Sanchez-Villa appeared to be disabled.

During the stop, the officers noted that Sanchez-Villa had nothing in his hands, but when one of the officers looked into the backseat, he saw a large duct-taped block on the floor between the passenger's feet. The officer instructed the passenger and

3

Sanchez-Villa to exit the vehicle. The officer picked up the block and asked Sanchez-Villa and the passenger whether it belonged to them. The passenger shook his head "no," and Sanchez-Villa stated, "No, I don't know what that is." The officer opened the block, and its contents field-tested positive for cocaine. Sanchez-Villa and the passenger were then arrested.

Incident to the arrest, Task Force officers searched the vehicle and located hidden compartments adjacent to the back seats. They located roughly eight additional kilograms of cocaine in that space; no cocaine was located in the front seat area of the vehicle. Officers also recovered an empty black duffel bag from the back seat, as well as two wallets containing cash. They later determined that the Honda was not registered to Sanchez-Villa.

Sanchez-Villa was indicted for trafficking in cocaine, and the indictment alleged that Sanchez-Villa and the passenger, individually and as parties concerned in the commission of a crime, were guilty of possessing the requisite amounts of cocaine. Sanchez-Villa entered a not-guilty plea.[1]

---

[1] During the pendency of the case, the passenger, who had also been charged, either fled the country or was deported. He was not present for trial.

Prior to trial, the State indicated to Sanchez-Villa, through supplemental discovery, that it had evidence of a DEA investigation of Sanchez-Villa that had been ongoing for over a year preceding his arrest. That evidence included a secret DEA recording from March 11, 2014, in which an individual the State claimed to be Sanchez-Villa discussed the sale of significant quantities of cocaine and marijuana with a CI who was cooperating with the DEA.

The State also brought forth testimony through a DEA agent[2] detailing the agency's investigation of Sanchez-Villa, including the agent's knowledge that Sanchez-Villa was a cocaine supplier and his characterization of Sanchez-Villa as a "heavy distributor" of drugs in the metro Atlanta area. The DEA agent also discussed various forms of lingo for cocaine used by Sanchez-Villa in the recorded conversation, which the agent indicated were in common use in conversations regarding cocaine trafficking. The DEA agent stated that, at various times, Sanchez-Villa had been observed driving the same Honda that he was driving at the time of the arrest. The DEA agent also testified that he was aware the Honda had secret

_____

[2] We note that the agent who presented this testimony was employed as a police officer in DeKalb County but, at the time of the investigation, was assigned to the DEA as a task force officer. As the officer explained, though he was employed by DeKalb County, he reported directly to the DEA and worked exclusively on federal investigations.

compartments. According to his testimony, the agent knew from his investigation that Sanchez-Villa was disabled and that he went by the alias "Carnal."

The Task Force did not know Sanchez-Villa was under DEA investigation at the time of arrest. Likewise, the DEA was not aware of the Task Force's investigation of Sanchez-Villa until after he was arrested and charged.

At trial, Sanchez-Villa conceded that cocaine was found in the vehicle, but he argued that he had no knowledge of the cocaine or the hidden compartments in the vehicle and was merely present as a driver. In light of this defense, the State initially argued in pre-trial proceedings that evidence from the DEA investigation was admissible to establish Sanchez-Villa's knowledge of drugs and drug trafficking. The State later clarified that it sought to admit the recording and the agent's testimony because such evidence was "intrinsic" to the events surrounding the trafficking charge. As discussed more fully in Division 1, *infra*, the trial court admitted the testimony and the recordings on this basis over various objections by Sanchez-Villa, noting that the cocaine discussed in the secret recording "could very well be the same cocaine" seized from the Honda.

Upon the State's request, the jury was instructed regarding the principles of joint, actual, and constructive possession of narcotics, but the State did not request

6

an instruction as to the presumption of possession. However, because the State presented evidence and emphasized in its opening and closing statements that Sanchez-Villa was, as the driver of the Honda, in control of the cocaine, Sanchez-Villa argued that the jury should be instructed as to the "equal access" defense even though the jury had not been instructed as to the presumption of possession that such defense would rebut. The trial court denied this request. The State also requested that the jury be instructed as to conspiracy, arguing that the evidence presented at trial supported this charge even though it was not part of the indictment. This request was granted over Sanchez-Villa's objection. Following his conviction, Sanchez-Villa brought this direct appeal.

(1) Sanchez-Villa first argues that the trial court's decision to admit evidence from the DEA investigation, including the recorded conversation, violated Rule 404(b), as it was admitted without pre-trial notice from the State.

Rule 404(b) provides, in pertinent part, that

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to . . . knowledge . . . . The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause

7

shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

OCGA § 24-4-404(b). We review decisions to admit evidence for abuse of discretion. *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014).

Before trial, the State initially argued to the trial court that evidence from the DEA investigation was necessary to show Sanchez-Villa's knowledge of drugs and drug trafficking. However, at a later pre-trial hearing and an evidentiary hearing held outside the presence of the jury, the State clarified that such evidence was not being offered pursuant to Rule 404(b) but rather was admissible as intrinsic evidence of the trafficking charge.[3]

---

[3] At oral argument, both parties agreed that the notice required by Rule 404(b) was not provided by the State. Counsel for the State indicated to the Court that the State would not argue that the DEA agent's testimony and the recording were or could have been properly admitted as evidence of knowledge pursuant to Rule 404(b). Therefore, we will not address any issues relating to admission of such evidence to prove knowledge pursuant to Rule 404(b), including any argument that Sanchez-Villa received constructive notice of the State's intention to introduce the evidence pursuant to Rule 404(b).

8

This case thus turns on whether the evidence at issue was "intrinsic" to the charged offense. Sanchez-Villa argues that the State failed to sufficiently link the DEA evidence to the events immediately surrounding Sanchez-Villa's arrest, and therefore such evidence cannot be intrinsic to the charged trafficking offense. For the reasons set forth below, we agree with that contention.

(a) Despite longstanding prohibitions on the use of character evidence, the traditional concept of *res gestae* provided that all the acts and circumstances surrounding the charged offense were admissible even if they reflected upon the defendant's character. *Baughns v. State*, 335 Ga. App. 600, 602 (1) (782 SE2d 494) (2016). This rule of admissibility has been carried forward to the new rules of evidence "under the concept of 'intrinsic' evidence, as opposed to 'extrinsic' evidence, i.e., evidence of 'other crimes, wrongs, or acts,' which is subject to the admissibility requirements of OCGA § 24-4-404(b)." *Satterfield v. State*, 339 Ga. App. 15, 19 (1) (a) (792 SE2d 451) (2016) (footnote omitted). "Evidence is intrinsic 'if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'"

*Brooks v. State*, 298 Ga. 722, 726 (2), n.11 (783 SE2d 895) (2016) (quoting *United States v. Utter*, 97 F.3d 509, 513 (II) (B) (11th Cir. 1996)).

In its brief, the State relies heavily upon this Court's recent decisions in *Satterfield*[4] and *Baughns*[5] as well as the Eleventh Circuit's decisions in *United States v. Gay*,[6] *United States v. Williams-Hill*,[7] *United States v. Lewis,*[8] and *United States v.*

---

[4] In *Satterfield v. State*, the defendant wrote a letter to the wife of the judge who had presided over his divorce. 339 Ga. App. 15, 16 (792 SE2d 451) (2016). The letter contained threats against the judge's family and warned that others might be disgruntled by his rulings. *Id*. The defendant was arrested the same day the judge received the letter, and police officers found a gun while searching the home where he was arrested and his vehicle that day. *Id*. at 16-17. The defendant was charged with making terroristic threats and making threats with intent to retaliate against a judge, and at trial the prosecution introduced the gun into evidence. *Id*. at 17-18. This Court upheld the admission of the gun, finding that it was inextricably intertwined with the offense and noting that "at the time [the defendant] was arrested, the evidence of the gun . . . strongly suggests that [the defendant] was *in the process*" of acting on the threats contained in the letter. *Id*. at 19-20 (2) (emphasis supplied).

[5] In *Baughns v. State*, the defendant was convicted of aggravated assault and burglary. 335 Ga. App. 600, 600 (782 SE2d 494) (2016). Over a ten-day period, the defendant and two others committed a string of burglaries in the same area. *Id*. Each was accomplished with a similar tool that was used to pry into the building, and in each burglary, the defendant was the driver and later sold the stolen items to a local pawn shop. *Id*. At trial, the court admitted evidence from the burglaries, noting that "[a]ll of the offenses were committed in a similar way, within a two-week period and in the same area . . . and included overlapping participants." *Id*. at 603 (1).

[6] 423 F. App'x 873 (11th Cir. 2011) (per curiam). In *Gay*, the defendant was charged in federal court with a robbery that was accomplished by grabbing a bag from a woman and running off. *Id*. at 874-75 (1). The trial court admitted witness

10

testimony stating that the defendant had been part of twenty robberies over a three-year period with a robbery crew and that a recent robbery he committed prior to the charged offense involved grabbing a bag from a woman and knocking her down as he ran off. *Id*. at 876. The Eleventh Circuit held that such testimony was "inextricably intertwined with evidence concerning the charged offense." *Id*.

[7] 592 F. App'x 889 (11th Cir. 2015) (per curiam). In *Williams-Hill*, the defendant was charged under federal law with possessing cocaine with intent to distribute. *Id*. at 889. The prosecution introduced evidence from two years prior showing that the defendant had been a co-conspirator with the same two participants in a drug operation. *Id*. at 890. In both the prior acts and in the charged offense, the defendant had performed the same role in the conspiracy, namely, intercepting and re-routing drug packages via her employment with the U.S. Postal Service. *Id*. The Eleventh Circuit found that the testimony was "necessary for the jury to understand" a witness's identification of the defendant as the same mail carrier who participated in both schemes and that the "prior acts formed an integral and natural part of the witness's accounts." *Id*. (citation and punctuation omitted).

[8] 373 F. App'x 930 (11th Cir. 2010) (per curiam). In *Lewis*, the federal trial court admitted evidence of the defendant's prior drug-related activities with his co-defendant and a cooperating witness. *Id*. at 931. The defendant and co-defendant were charged with cocaine conspiracy and attempted possession. *Id*. at 932. In addition to testifying about his involvement in the charged offenses, the witness testified about an ongoing narcotics distribution organization that he, the defendant, and the co-defendant began operating the prior year. *Id*. As part of that organization, the defendant routinely transported narcotics from Atlanta to Birmingham, where the three members of the conspiracy would divide up the drugs for sale. *Id*. The Eleventh Circuit concluded that this evidence of "prior uncharged narcotics dealings between a defendant and a cooperating witness are admissible as intrinsic evidence where the evidence about the prior crime inextricably is intertwined with the evidence of the charged drug offense." *Id*. (citations omitted). The Eleventh Circuit noted that the testimony "established context and showed why [the other participants] contacted him about participating in the current cocaine deal. The prior dealings were linked closely in time as well as circumstance to the instant offenses as the three planned to split the

*Foster*[9] to argue that the recording and the evidence of the DEA investigation were intrinsic to the charged offense. The State suggests that, as in those cases, the evidence at issue was both part of the same series of transactions as the cocaine trafficking offense and that it was inextricably intertwined with the offense. Because we find each case cited by the State to be distinguishable from this case and further fail to find the suggested bond between the evidence introduced and the charged offense, we disagree.

As an initial matter, we note that the timeline established by the DEA agent's testimony essentially ends on the date on which Sanchez-Villa was secretly recorded by the DEA (just under a month before his arrest for trafficking). While this temporal attenuation is not dispositive in this case, it does distinguish this case from

---

cocaine for sale in Birmingham and Atlanta." *Id*.

[9] 889 F.2d 1049 (11th Cir. 1989). In *Foster*, the defendant was convicted in federal court of possession of narcotics with intent to distribute and related offenses. *Id*. at 1050-51. The defendant objected to the introduction of evidence that showed that prior to the arrest, he had been involved in a drug transaction that involved the "same mode of transportation . . . between the same cities . . . to smuggle the same amount . . . of the same drug . . . in the same manner of hiding it . . . on the same person . . . only 17 days prior to his arrest for a virtually identical transaction." *Id*. at 1053 (emphasis omitted). The Eleventh Circuit upheld admission of this testimony, finding that evidence of the prior trip was inextricably intertwined with the charged offense. *Id*.

*Satterfield*, where the evidence at issue was based on an act (possessing a gun) that occurred while law enforcement believed the defendant was in the process of carrying out the charged offense. The evidence at issue in this case is considerably more attenuated in time and space from the events leading up to the charged offense, so *Satterfield* offers little help to the State.

The remaining cases relied upon by the State are best viewed as "modus operandi" and "ongoing criminal concern" cases. Each of those decisions upheld the admission of evidence showing that behavior, actions, or other characteristics of the transaction for which the defendant was charged were virtually identical to the defendant's pattern of criminal behavior at some prior time or were part of a continuous illicit business operation. *See Baughns*, 335 Ga. App. at 600; *Gay*, 423 F. App'x at 873-75; *Williams-Hill*, 592 F. App'x at 889-90; *Lewis*, 373 F. App'x at 931-32; *Foster*, 889 F.2d at 1053.

Here, however, the contested evidence fails to show a clear modus operandi on the part of Sanchez-Villa. The evidence—specifically, the recording—showed Sanchez-Villa to be a potential seller of cocaine, whereas he was charged in this case following a *purchase* of cocaine. This inconsistency alone argues against finding that the DEA evidence showed a well-defined pattern of activity that was virtually

identical to Sanchez-Villa's behavior at the time of his arrest. *Cf. Williams-Hill*, 592

F. App'x at 890.

Likewise, Sanchez-Villa is identified in the recording and by the DEA agent

by the alias "Carnal," but no other evidence presented at trial shows him going by that

name at the time of the trafficking arrest. In contrast, the CI's tip to the Task Force

involved the alias "Cuarenta." The State makes no effort to show that "Carnal" and

"Cuarenta" are the same person, and, in any event, the DEA agent's testimony

regarding Sanchez-Villa's use of the "Carnal" alias does not fit into any other clear

pattern of behavior shown by other evidence presented by the State.

At most, the DEA agent's testimony confirms that Sanchez-Villa was driving

the same Honda at the time of the recording that he was driving at the time of the

arrest.[10] While the DEA agent's testimony at trial confirms that the agent was aware

that the Honda "had a trap in the back portion of the back seat," neither this testimony

nor any other evidence offered by the State connect Sanchez-Villa's use of that

vehicle at the time of the recording (driving to discuss a potential drug sale) with his

---

[10] As we discuss further in Division 1(b), *infra*, our holding does not preclude the State from seeking to admit specific pieces of evidence at any new trial of Sanchez-Villa, provided a proper evidentiary foundation is set forth by the State and the evidence is otherwise admissible.

14

use of the vehicle at the time of the arrest (driving to make a drug purchase). Without more, the DEA agent's testimony that he was aware that the Honda contained a secret compartment does not establish a modus operandi on the part of Sanchez-Villa. *Cf. Foster*, 889 F.2d at 1053.

*Baughns* and *Gay* can also be characterized as "crime spree" cases. In both cases, the evidence found to be intrinsic was in regard to a series of similar crimes involving the defendant that all had similar characteristics. However, unlike the evidence in those cases, the contested evidence here is more general in nature and does not specifically show Sanchez-Villa participating in a series of similar drug buys leading up to the charged offense, *cf. Baughns*, 335 Ga. App. at 600 (1); nor does it show him acting with the same participants or playing a role similar to that which he was performing in the transaction for which he was arrested. *Cf. Gay*, 423 F. App'x at 873; *Baughns,* 335 Ga. App. at 603 (1). In addition, the State did not establish before the jury that the discussion captured by the recording was the predicate sale transaction for which Sanchez-Villa was seeking supply when he was arrested. While the trial court speculated that the cocaine discussed in the recording *may* well have been the same cocaine that was seized in the arrest, the State did not present any evidence or make any argument to the jury to that effect.

15

Therefore, we hold that under *Brooks*, the DEA agent's testimony and the recording were not part of the same series of transactions or occurrences as the charged offense, and similarly, that such evidence was not inextricably intertwined with the charged offense.[11]

The State also asserted at oral argument that admission of evidence from the DEA investigation satisfies the final *Brooks* factor in that it was necessary to complete the story of this crime. We disagree.

Sanchez-Villa was arrested by a DeKalb County police officer following a call from a Task Force agent who was also employed by DeKalb County. The DEA was not involved in the surveillance or the apprehension of Sanchez-Villa that night, and the State concedes that neither the Task Force agents nor the DeKalb officer knew that a DEA investigation involving Sanchez-Villa had been ongoing. The testimony from the DEA agent and the recording thus shed no light on why the DeKalb police began surveiling Sanchez-Villa that night or what they later found in his vehicle. *Cf.*

---

[11] In its brief, the State also suggests that admission of evidence from the DEA investigation was necessary for the jury to understand the DEA agent's identification of Sanchez-Villa. However, the only apparent need for the DEA agent to identify Sanchez-Villa was for purposes of bringing the recording into evidence. Sanchez-Villa had already been identified in the courtroom by the DeKalb police officer who performed the traffic stop, and other than for purposes of laying foundation for the recording, Sanchez-Villa' identity was not an issue in the case.

16

*Gay*, 423 F. App'x at 875-76 (II)(A) (evidence of defendant's status as parolee helped jury understand why parole officer participated in search of his home and vehicle and knew of his financial situation).

Likewise, despite the trial court's theory that Sanchez-Villa may have planned to use the cocaine seized in the arrest to fill the order discussed in the recording, neither the DEA agent's testimony nor the recording are necessary to give context to the essential facts of this case. Because Sanchez-Villa is charged with a possession-based offense (albeit possession of a large quantity of contraband) the essential story of the case begins with the tip received by the Task Force and concludes with the traffic stop where Sanchez-Villa was arrested and the drugs were seized. Thus, rather than completing the story of this crime in any meaningful way, evidence from the DEA investigation expands it considerably.

Accordingly, as the evidence lacks any demonstrated connection to the events on the night of Sanchez-Villa's arrest, we hold that evidence from the DEA investigation was not intrinsic to the charged trafficking offense. The testimony was thus in regard to "other acts" by Sanchez-Villa, and as it was ostensibly offered by the State to prove knowledge, the trial court abused its discretion by admitting this

evidence without requiring the State to provide Sanchez-Villa with notice pursuant to Rule 404 (b).

(b) Finding error, we must also determine whether this error was harmful. "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Rivera v. State*, 295 Ga. 380, 382 (2) (761 SE2d 30) (2014) (citation omitted). Under the "highly probable" test, "a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of [the] error." *Lowther v. State*, 263 Ga. App. 282, 283 (1) (587 SE2d 335) (2003) (citations and punctuation omitted). Admission of evidence does not constitute reversible error where, viewing the posture of the entire record, it is highly probable that its admission did not contribute to the verdict. *Id*.

Here, we find that the trial court's decision to admit the contested evidence was harmful. The DEA agent was one of only four witnesses called in the trial,[12] and his testimony was not cumulative, as each of the other witnesses spoke only to events that

---

[12] The jury heard testimony from an officer from the Task Force, the DeKalb police officer who initiated the traffic stop, a GBI drug lab analyst, and the DEA agent. Sanchez-Villa called no witnesses, and his counsel offered only minimal opening and closing statements.

18

transpired the night of the arrest. *See Doyal v. State*, 287 Ga. App. 667, 669-70 (2) (653 SE2d 52) (2007) (cumulative nature of erroneously admitted evidence is relevant to harmful error analysis). In addition, the DEA agent's testimony and the recording were referred to multiple times in the State's closing argument, and the State invited the jury to disregard Sanchez-Villa's mere presence defense based on this evidence. Importantly, the DEA agent's testimony and the recording, offered without any limitation as to how they should be used by the jury, encouraged the jury to see Sanchez-Villa as a "heavy distributor" of narcotics and place its entire consideration of the case in that context.[13] *See Britton v. State*, 257 Ga. App. 441, 443 (1) (571 SE2d 451) (2002) (harmful error where erroneously admitted evidence placed defendant's character at issue "by implicating him in criminal activity and by revealing that the police had been interested in him for a period of time") (citation omitted).

While Sanchez-Villa concedes that the other evidence in the record was sufficient to support the trafficking charge, the State's broad use of the DEA agent's testimony and the recording in this case illustrates precisely the type of risk that Rule

---

[13] At one point in the State's closing argument, counsel for the State says of Sanchez-Villa, "That's what those recordings told you. He knows about cocaine. He's been doing this."

404(b) is designed to mitigate. Because it is highly probable that the jury's verdict was affected by the decision to admit the contested evidence, we therefore find that the trial court's decision to admit this evidence constituted reversible error.

In so ruling, we acknowledge that, at retrial, the trial court may well have discretion to admit some or all of the DEA agent's testimony and the recording pursuant to Rule 404(b). However, in exercising such discretion, the trial court must consider the factors set forth in *Bradshaw v. State*, 296 Ga. 650, 656 (769 SE2d 892) (2015) and apply the other procedural safeguards in Rule 404(b), including granting the defendant an opportunity to request that the jury be instructed as to the limited purposes for which it may consider the evidence.

Finding that the admission of this evidence constitutes reversible error, we therefore vacate Sanchez-Villa's conviction and remand this matter for a new trial consistent with this opinion.

(2) Because they implicate issues that are likely to arise on retrial, we will also consider Sanchez-Villa's other enumerations of error. Sanchez-Villa argues that the trial court erred by not instructing the jury as to the "equal access" defense. He claims that the evidence presented at trial supported the defense–namely that the controlled substances seized from the vehicle were not in Sanchez-Villa's immediate possession

at the time and that he and the other occupants of the vehicle had equal access to it leading up to the arrest and seizure. Sanchez-Villa also argues that the State opened the door to this defense by arguing that a presumption of possession of the controlled substances should attach to Sanchez-Villa. We disagree.

The State did not request, and the trial court did not include, an instruction to the jury regarding the presumption of possession. As this Court has held, a charge on the equal access defense is appropriate only to counter a jury instruction on the presumption of possession, and when no instruction is given on the presumption, an equal access instruction is not required. *See Kan v. State*, 199 Ga. App. 170, 171 (3) (404 SE2d 281) (1991).

Sanchez-Villa argues that, even though an instruction on the presumption of possession was not requested by the State, an equal-access defense was triggered when the State introduced evidence of Sanchez-Villa's control of the car and noted repeatedly that Sanchez-Villa was the driver of the seized vehicle. Again, we disagree. As the Supreme Court held in *Johnson v. State*, 280 Ga. 511, 513 (630 SE2d 377) (2006), even if evidence presented by the State gives rise to the presumption, the trial court must instruct the jury as to the presumption of possession arising from the defendant's control of the vehicle before it can properly instruct the jury as to the

21

equal access defense. As the trial court did not instruct the jury on presumption of possession, an equal-access instruction was unnecessary. *Id.* We therefore affirm the trial court's decision to deny Sanchez-Villa's request for an instruction regarding the equal access defense.

(3) Finally, Sanchez-Villa argues that the trial court erred by instructing the jury as to a conspiracy charge, over Sanchez-Villa's objection. He claims no evidence supported the State's request for that instruction. We disagree.

While no conspiracy was alleged in the indictment, the trial judge can instruct the jury on a conspiracy charge so long as evidence is presented to support the charge. *See Meyers v. State*, 299 Ga. 409, 412-13 (788 SE2d 451) (2016). "To authorize a requested jury instruction, there need only be *slight* evidence supporting the theory of the charge." *Hamm v. State*, 294 Ga. 791, 794 (2) (756 SE2d 507) (2014) (emphasis supplied). Thus, in this case, the State had to present at least some evidence of each element of a conspiracy charge: that Sanchez-Villa, together with one or more persons, conspired to commit a crime and that any one of them did an overt act to effect the object of the conspiracy. *See* OCGA § 16-4-8.

Here, the trial record contains sufficient circumstantial evidence of a conspiracy. Both Sanchez-Villa and the passenger were present in the vehicle during

22

the discussion at the gas station, in the restaurant parking lot where the duffel bag was placed into the Honda, and at the traffic stop. From this, a jury could reasonably infer that the two had at least a tacit agreement to work together. *See Turner v. State*, 275 Ga. 343, 345 (2) (566 SE2d 676) (2002) (proof of an express agreement is not required, and presence, companionship, and conduct both before and after the alleged offense are circumstances which may give rise to the existence of a conspiracy). The jury could also find that the receipt of the duffel bag and subsequent possession of the cocaine were overt acts in furtherance of the conspiracy. *See Van Morgan v. State*, 269 Ga. App. 715, 719 (2) (605 SE2d 120) (2004) (possession of contraband by member of conspiracy constitutes overt act in furtherance of conspiracy to possess contraband). The State has carried its minimal *prima facie* burden here, and we find no error in the trial court's decision to instruct the jury regarding conspiracy.

*Judgment vacated and case remanded. McFadden, P. J., and Branch, J., concur.*