# PER CURIAM

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
http://www.gaappeals.us/rules

**October 19, 2016**

# In the Court of Appeals of Georgia

A16A1278. SATTERFIELD v. THE STATE.

Per Curiam.

Following a trial by jury, James Satterfield was convicted on three counts of terroristic threats and two counts of terroristic threats with intent to retaliate against a judge. On appeal, he contends the trial court erred by allowing the State to introduce into evidence a gun found in Satterfield's vehicle at the time of his arrest, by permitting the State to pose improper hypothetical questions to Satterfield's expert witness, and by allowing the State's "golden rule" argument and denying Satterfield's request for a curative instruction. For the reasons shown below, we affirm.

"On criminal appeal, appellant is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict. This Court does not reconsider evidence or attempt to confirm the accuracy of testimony.

Assessing a witness's credibility is the responsibility of the factfinder, not this Court." *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014) (citations omitted).

So construed, the evidence shows that in April, 2011, Satterfield, acting pro se, petitioned for divorce in the Superior Court of Cobb County. By mid-2012, the divorce was granted; the final decree included an order that Satterfield pay his ex-wife $40,000, that his ex-wife receive the couple's residence, and that Satterfield receive a lake property. In late 2012, Satterfield told a nurse that he wanted to hurt a judge's wife because he was very unhappy with a divorce situation. Then on November 30, 2012, Satterfield told a professional counselor at an outpatient counseling session that he was angry with the judge who presided over his divorce and that he wanted to "kill" the judge or the judge's family. The counselor told Satterfield that she was obligated to report his statement to authorities, and she did so. Within a day, the local sheriff notified the judge that Satterfield had threatened his family.

On December 30, 2012, the judge received a five-page, typewritten letter from Satterfield addressed to the judge's wife ("the letter"). In the letter, Satterfield told the judge's wife that at one point he fully intended to kill her and her children as a

way of getting back at, or teaching a lesson to, her husband who had acted in a biased, unethical, and spiteful manner, often siding with his ex-wife's attorney during the divorce proceedings. Satterfield then asserted that he had had a change of heart, no longer wanted to kill the judge's family, and now wanted to warn the judge's wife about others who have suffered from similar behavior by the judge. But, despite this purported change of heart, a review of the entire letter shows that a jury was fully authorized to conclude that Satterfield was still threatening to kill the judge's family and that Satterfield was full of thoughts of revenge against the judge for the way he handled Satterfield's divorce. For example, in the letter Satterfield gave veiled threats, such as "another 'James Satterfield' is out there. He may be [lying in wait in one of a number of ways]. Who know[s] how many different way[s] he will be able to get to you." Or, "You have not suffered anything, so far"; and "so far, I have constrained myself." Satterfield also wrote about how in preparation of punishing those responsible for his unhappiness, he gave away all of his money, land, and vehicles. Satterfield concluded the letter by stating "In closing, I hope you take steps to protect yourself and your children from other people who like me are taken advantage of by your husband and his cohorts."

3

Based on the letter, the judge felt that Satterfield was threatening to harm him and his family and that the threat was imminent; the judge's wife also read the letter and their children learned of the contents. The judge therefore notified the Sheriff's department. Based on a warrant for his arrest, Satterfield was arrested on the same day that the judge read the letter. Satterfield was arrested as he walked out of his ex-wife's house, and the sheriff's department then obtained a warrant to search that house and Satterfield's van, which was parked in the driveway. The officers found inside the van an unloaded Taurus revolver, which is capable of shooting both .410 shotgun shells and .45 caliber rounds. The manufacturer's name for the gun is "The Judge," and that name is printed on the side of the weapon. Ammunition for the gun was found inside the house, along with a Taurus box for the gun. The officers found a laptop computer inside the van, which the officers searched after obtaining a warrant to do so. The laptop contained a document entitled "fun things to do together or separately," which had last been accessed on December 21, 2012. One of the items listed was "get revenge." Officers also found a document that contained the judge's address and a photograph of his house. The van contained clothes and other personal possessions that appeared to belong to Satterfield. On Satterfield's person, the officers found a check written to his ex-wife in the amount of $71,500. A bank officer

4

testified that the check had been processed and that only $857.84 remained in Satterfield's account thereafter. These facts raised the implication that at the time he was arrested, Satterfield was in the process of doing what he stated in the letter — that he was disposing of his assets in advance of taking revenge on the judge and his family.

Satterfield presented expert witnesses in his own defense who testified that Satterfield had serious mental disorders, including suicidal ideations, major depressive disorder, a variant of bipolar disorder, and post-traumatic stress disorder. Satterfield also presented evidence in support of his defense that he had a delusional compulsion that "overmastered his will to resist committing the crime." See OCGA § 16-3-3.[1] A forensic psychologist testified that although Satterfield knew the difference between right and wrong at the time Satterfield sent the letter to the judge's wife, he also had a delusional compulsion that overmastered his will, which was that because the judge had mistreated him, the judge must have mistreated others in the same way; Satterfield therefore decided to warn the judge's wife that others who had

---

[1] "A person shall not be found guilty of a crime when, at the time of the act, omission, or negligence constituting the crime, the person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime." OCGA § 16-3-3.

5

been mistreated by the judge might seek to harm the judge's family. Expert witnesses called by the court concurred in the opinion that Satterfield had a delusional compulsion, although one testified that if Satterfield had acted out of a sense of revenge, he would not have been acting out of a delusional compulsion.

Satterfield was charged with three counts of terroristic threats, OCGA § 16-11-37 (b),[2] and two counts of terroristic threats with intent to retaliate against a judge, OCGA § 16-11-37 (e) (1).[3] The indictment charged that the threat in each count was to murder one or more members of the judge's family. The jury found Satterfield guilty on all counts. The trial court merged the two counts of threats with intent to retaliate and sentenced Satterfield to ten years with eight to serve on those counts; on the remaining counts, the court sentenced Satterfield to five years to serve concurrent

---

[2] "A person commits the offense of a terroristic threat when he or she threatens to . . . [c]ommit any crime of violence . . . [w]ith the purpose of terrorizing another[.]" OCGA § 16-11-37 (b).

[3] "A person who commits or attempts to commit a violation of subsection (b) or (c) of this Code section shall, upon conviction thereof, be punished by a fine of not less than $50,000.00, imprisonment for not less than five nor more than 20 years, or both, when such act is done with the intent to retaliate against any person for or intimidate or threaten any person from . . . [a]ttending a judicial or administrative proceeding as a . . . judge." OCGA § 16-11-37 (e).

with the retaliation counts. Satterfield's motion for new trial was denied and he appealed.

1. During trial, Satterfield objected to the introduction of the revolver into evidence on the same grounds raised on appeal, that it was not relevant to the charges against him and that even if it was relevant, the gun was significantly more prejudicial than probative. The trial court overruled the objection and the gun was admitted into evidence. In denying Satterfield's motion for new trial, the trial court held that the gun was evidence of Satterfield's intent to terrorize and evidence that countered Satterfield's argument that his letter indicated that he no longer had a present intent to terrorize. We review decisions to admit evidence for abuse of discretion. *Blackledge v. State*, 299 Ga. 385, 391 (5) (788 SE2d 353) (2016) (citation omitted).

(a) Satterfield's trial was held in January 2014 and was therefore governed by the new Evidence Code. See Ga. L. 2011, pp. 99, 214, § 101 (new Evidence Code effective for trials commencing on or after January 1, 2013).[4] Under the new code, evidence is relevant if it has "any tendency to make the existence of any fact that is

---

[4] "Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) (citation omitted).

of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. Generally, all relevant evidence is admissible, OCGA § 24-4-402, but "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403.

We find no abuse of discretion by the trial court allowing admission of the revolver. First, we disagree with Satterfield that the letter showed that he had "unequivocally renounced, rejected, and repudiated any former intention to harm the judge's family," and that, therefore, the State was not authorized to argue to the jury that the letter showed that Satterfield intended to kill the judge's family. It is for the jury to decide whether the defendant's actions constitute a terroristic threat, and "[a] communication is sufficient to constitute a threat if a reasonable person could conclude that it was a threat under the circumstances." *Clement v. State*, 309 Ga. App. 376, 379-380 (1) (a) (710 SE2d 590) (2011) (citations and punctuation omitted). Our reading shows that Satterfield's letter contained many veiled threats to kill the judge's family; moreover, the jury was not required to believe that Satterfield had in fact changed his mind about killing the family. Accordingly, a reasonable person could

conclude that the letter contained multiple threats to kill, and therefore the State was authorized to argue and the jury was authorized to find that Satterfield had threatened murder.

Second, Satterfield's argument that the gun was not res gestae and constituted evidence wholly unconnected to the charges against him is without merit. Prior to the new Evidence Code, the concept of res gestae provided that all the acts and circumstances surrounding the charged offense were admissible even if they reflected upon the defendant's character. *Baughns v. State*, 335 Ga. App. 600, 602 (1) (782 SE2d 494) (2016). This rule of admissibility has been carried forward to the new Evidence Code under the concept of "intrinsic" evidence, as opposed to "extrinsic" evidence, i.e., evidence of "other crimes, wrongs, or acts," which is subject to the admissibility requirements of OCGA § 24-4-404 (b).[5] *Baughns*, 335 Ga. App. at 602 (1). "Evidence is intrinsic 'if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to

[5] Evidence of "other crimes, wrongs, or acts," so-called "extrinsic evidence," is admissible for purposes "including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" provided proper notice is given. OCGA § 24-4-404 (b). Notice is not required when such evidence "is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim." OCGA § 24-4-404 (b).

9

complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'" *Brooks v. State*, 298 Ga. 722, 727 (2), n. 11 (783 SE2d 895) (2016), quoting *United States v. Utter*, 97 F3d 509, 513 (II) (B) (11th Cir. 1996). Here, at the time that Satterfield was arrested, the evidence of the gun, the gun box, and the ammunition strongly suggests that Satterfield was in the process of executing the steps outlined in the December 30, 2012 letter in that he was disposing of his assets and arming himself to follow through on his plan to murder the judge's family, motivated by revenge. Accordingly, at a minimum, the gun and related evidence were inextricably intertwined with the evidence of the charged offenses and therefore relevant to the charges against Satterfield.

The gun evidence was also relevant to Satterfield's defense to the crimes for which he was charged. In order to prove that Satterfield committed a terroristic threat, the State was required to prove that Satterfield communicated a threat to the victims, that the threat was of an act of violence, and that Satterfield acted with intent to terrorize. *Carver v. State*, 258 Ga. 385, 386 (1) (369 SE2d 471) (1988); see also *Armour v. State*, 265 Ga. App. 569, 571 (1) (594 SE2d 765) (2004) ("The crime of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to

10

terrorize.") (footnote omitted). "Since a deliberate intent to terrorize is an integral part of the crime, evidence showing terroristic intent is not only relevant, but necessary, to proving such a case." *Carver*, 258 Ga. at 386 (1). Satterfield's defense was that he did not intend to threaten or terrorize but rather to warn the judge's family that others like him might soon harm them because of the judge's actions. As the trial court held, the evidence procured during Satterfield's arrest, including the gun, tended to show that Satterfield was actually preparing to follow through on the threats contained in the letter. This evidence thus rebutted Satterfield's defense that he was innocently trying to warn the victims of danger from other sources. See *Blake v. State*, 273 Ga. 447, 448 (2) (542 SE2d 492) (2001) (under former rules of evidence, evidence admissible where "it served to rebut appellant's sole defense at trial — insanity [—] that rendered him unable to control his actions in killing the victim."). The gun was also relevant to Satterfield's threats because Satterfield stated in the letter that the sound of firecrackers on New Year's eve "would help cover the noise of gunshots."

In short, Satterfield's possession of the gun was inextricably intertwined with the evidence relating to Satterfield's terroristic letter and was relevant to rebutting his defense in that it tended to make his defense less probable. See OCGA §§ 24-4-401;

11

24-4-402. The trial court therefore did not abuse its discretion by finding the gun to be admissible.

(b) We also hold that the trial court did not abuse its discretion in determining that the prejudicial value of the gun did not substantially outweigh the probative value under OCGA § 24-4-403. Here, the evidence was very probative as rebuttal to Satterfield's defense that he did not intend to threaten or terrorize but only to warn the judge's family. And although certainly prejudicial,[6] we cannot say that the trial court abused its discretion in determining that the prejudicial effect did not substantially outweigh the probative value of the gun. Exclusion of evidence under § 403 is "an extraordinary remedy which the courts should invoke sparingly, and the balance should be struck in favor of admissibility." *Williams v. State*, 328 Ga. App. 876, 879 (1) (763 SE2d 261) (2014) (punctuation and footnote omitted). We find no abuse of discretion by the trial court in its decision to allow into evidence the weapon found in Satterfield's car at the time of his arrest.

---

[6] See *United States v. Mills*, 704 F2d 1553, 1560 (IV) (11th Cir. 1983) ("Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403.") (citation omitted; emphasis in original).

2. Satterfield next contends the trial court erred by allowing the State to pose five improper questions of his expert witness because the questions were not based on facts in evidence. We find no error.

The essence of Satterfield's argument is that in each of the five questions, the State asked Satterfield's expert if the expert's opinion that Satterfield had a delusional compulsion would be different if it could be shown that Satterfield acted out of a desire for revenge on the judge. Satterfield objected on the ground that this fact was not in evidence. There were facts in evidence supporting a revenge theory, however. Two medical professionals testified that Satterfield told them that he was considering harming a judge's family because of his anger at how the judge handled his divorce; a recently-accessed document found on Satterfield's computer showed that he contemplated revenge; and the threatening letter itself was full of references to acting out of revenge. We find no abuse of discretion.

3. Finally, Satterfield contends the trial court erred by not sustaining his objection to the State's closing argument on the ground that it violated the "golden rule," which forbids any argument "that, regardless of the nomenclature used, asks the jurors to place themselves in a victim's position." *Braithwaite v. State*, 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002) (footnote omitted).

13

In the relevant portion of the closing, the prosecutor argued:

Again, just — man, read the letter. Read the letter. It will make your heart skip a beat. A mother and father read this letter. You can just imagine how they felt.

Satterfield objected and moved for a mistrial on the ground that the State violated the golden rule by asking the jury "to step into the shoes of the victims." The court denied the motion for mistrial. We review a decision regarding improper argument for abuse of discretion. *McKibbins v. State*, 293 Ga. 843, 850 (3) (b) (750 SE2d 314) (2013).

"A 'golden rule' argument is one that, regardless of the nomenclature used, asks the jurors to place themselves in a victim's position." *Braithwaite*, 275 Ga. at 885 (2) (b) (footnote omitted). Such an argument is impermissible "because it encourages the jurors to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Spears v. State*, 296 Ga. 598, 614 (11) (b) (769 SE2d 337) (2015) (citation and punctuation omitted). The statement at issue here did not violate this rule because it was not concerned with how a juror would feel if he or she were the victim. Rather it asked the jurors to imagine how the victims felt when they received the letter, and whether the letter constituted a threat was an issue to be decided by the jury. See *Ellington v. State*, 292 Ga. 109, 143 (10)

14

(b) (735 SE2d 736) (2012) (not a violation of the golden rule where "the argument focused the jury's attention on the evidence showing the nature of the acts [the defendant] committed against the victims rather than directly asking jurors to place themselves in the position of the victims"); *Hargrove v. State*, 291 Ga. 879, 884 (5) (734 SE2d 34) (2012) (not a violation of golden rule to ask jury to consider the feelings of the victim's family); *Ledford v. State*, 289 Ga. 70, 86 (17) (709 SE2d 239) (2011) (not a violation of golden rule to "urg[e] the jury to think about the unpleasant way in which the victim had died"). Compare *Spears*, 296 Ga. at 614 (11) (b) (violation of golden rule where the State argued, "If he ever escaped, it could be you."). Accordingly, the trial court did not abuse its discretion by denying Satterfield's motion for mistrial.

*Judgment affirmed. Division Per Curiam. All Judges concur.*