**FIRST DIVISION**
**MIILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 8, 2019**

# In the Court of Appeals of Georgia

A19A0197. BROWN v. THE STATE.

BROWN, Judge.

A jury convicted Janay Marques Brown of armed robbery, two counts of aggravated assault, two counts of possession of a firearm during the commission of a crime, and criminal attempt to commit armed robbery.[1] She appeals the denial of her amended motion for new trial, challenging the sufficiency of the evidence to support her convictions and arguing that the trial court (1) erred in denying her motion to sever her trial from that of a co-defendant; (2) erred in admitting other act evidence; and (3) erred in its instruction to the jury on other act evidence. For the reasons set forth below, we affirm.

---

[1] Brown was tried along with her co-defendants Jerome Greene and Mario Mack.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, we neither weigh the evidence nor decide witness credibility, but determine only whether the evidence is sufficient to sustain the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). We set out the evidence relevant to this appeal in an unpublished opinion in which we affirmed the conviction of Brown's co-defendant Mario Mack as follows:

> So viewed, the evidence shows that on June 7, 2011, the two victims, Omar Grissett and Kenneth Harris, went to an apartment complex in Augusta to meet Brian Dixon and some women. Grissett testified that he had $8,000 in cash on his person and that he gave Harris $4,000 in cash so they could impress the women and look like "big men." When they arrived at the complex, they met three women who were outside. The women, Tevia Smith, [appellant] Janay Brown, and Brittany Walton, told Grissett they were going to "hit a lick . . . rob somebody." [Smith testified that Grissett had a lot of money and that both Grissett and Harris were "flashing cash."] Grissett testified that he gave Brown $100 so she would not have to rob anyone and that he and Harris then took Walton and Brown to the store to get beer and cigarettes. When they returned and entered Brown's apartment, Grissett saw Dixon on the couch with Smith. According to Grissett, Harris was directly behind him as they entered the apartment, at which point "a dude came at him, pointed a gun, say you already know what it is, give it up." When Harris

2

saw what was happening, he tried to back out the door, but one of the women grabbed him and tried to pull him back into the apartment. When Harris brushed her off, another gunman appeared and "put the gun to Harris, they get to tussling" and then shots were fired. In the meantime, the man pointing a gun at Grissett told him to lie on the ground. The two struggled, and the gunman pulled down Grissett's pants and grabbed Grissett's money. At some point, both Harris and Grissett were shot. The man who had been struggling with Harris shot Grissett four or five times. Grissett fled and flagged down a police officer, but was unable to identify either gunman.

An investigator with the Richmond County Sheriff's Department responded to the scene and found Grissett, Harris, and . . . Jerome Greene, all of whom had been shot. The men were taken to the hospital for treatment. Nine-millimeter shell casings were found at the crime scene, and a nine-millimeter live cartridge was recovered from Greene's pants. Dixon was taken into custody with a nine-millimeter firearm in his possession. Dixon told the investigator that he had obtained the firearm for Greene because Mack and Greene had planned to rob Harris and Grissett and that he had recovered the firearm in some bushes after Greene discarded it following the robbery. Dixon told the investigator he knew Greene, but that he was "not familiar with" Mack. Dixon also told the investigator that Greene confronted Harris with the gun and demanded money, and that when Harris handed him a pack of cigarettes instead, Greene shot Harris in the leg. Dixon identified Mack from a photographic lineup as Greene's accomplice during the robbery.

3

At trial, Smith testified that she saw two masked men in the kitchen of the apartment and that they were armed with what she believed to be either nine-millimeter or .380-caliber handguns. She heard but did not see the shootings, and, as she fled the apartment, she saw Grissett and Greene on the ground; Smith testified that the two masked men robbed Grissett and Harris and that after the robbery she saw that Grissett and Greene had been shot. In her statement to police after the robbery, which she recanted at trial, Smith stated that Dixon brought Mack and Greene into Brown's apartment to rob Grissett and Harris when they returned from the store and that when the two victims entered the apartment, Mack and Greene were standing in the kitchen. [In her testimony during her sentencing hearing, which she also recanted at trial, Smith testified that she, Brown, Walton, Dixon, Greene, and Mack were involved in the robbery.]

. . .

4

Mack, Greene, Dixon, and all three women were indicted for crimes stemming from the incident.[2] Smith and Dixon pled guilty, and Greene and Brown were tried jointly with Mack.

(Punctuation omitted.) *Mack v. State*, 345 Ga. App. XXVI (May 11, 2018) (unpublished), certiorari denied, Case No. S18C1420 (decided January 7, 2019). Additional facts will be recited as necessary to consider Brown's arguments.

1. In her first enumeration, Brown contends that the trial court erred in denying her motion to sever her trial from that of Greene, who was dressed in prison inmate attire. Brown's co-defendant Mack asserted the identical argument in his appeal, which we rejected. We reject Brown's argument for the same reasons as those stated in *Mack*, supra:

> "It is well established that to compel a criminal defendant to wear distinctive prison garb at his trial is to deny him the presumption of innocence, a violation of his constitutional due process rights." (Citation

---

[2] The indictment charged Brown – jointly with the others – with one count each of armed robbery and criminal attempt to commit armed robbery, and two counts each of aggravated assault and possession of a firearm during the commission of a crime. Dixon and Smith were charged with additional crimes not relevant to this appeal. At trial, the trial court granted both the State and Brown's requests to charge the jury on conspiracy. See, e.g., *Bradford v. State*, 202 Ga. App. 724, 725 (1) (415 SE2d 697) (1992) (even if conspiracy is not charged in indictment, trial court may give charge where evidence supports an inference that defendants acted in concert).

omitted.) *Robbins v. State*, 177 Ga. App. 547 (340 SE2d 206) (1986). In this case, Greene appeared for the first day of trial wearing prison garb. Greene knew a week prior that his case was scheduled for trial, and he advised the trial court that he communicated with his family in that time, but that no one brought him other clothes to wear at trial. Mack [and Brown] moved for severance, arguing that [they were] prejudiced by "being involved with someone that's dressed that way." The trial court denied [the] motion, stating, "in my experience, jurors are extremely intelligent and they're able to separate those individuals that they find are, in fact, guilty of crimes and not be prejudiced by the way people are dressed." [The trial court also noted that Brown was dressed in civilian attire].

We find no reason to believe that Greene's prison attire prejudiced [Brown]. On the contrary, it is more likely that [Brown]'s appearance in civilian clothes, alongside Greene dressed in prison garb, reinforced a presumption of [Brown]'s individual innocence. In this instance, we see no justification for finding that Greene's attire inherently prejudiced [Brown]. . . .

(Punctuation omitted.) *Mack*, 345 Ga. App. XXVI.

2. In her second enumeration of error, Brown contends that the trial court erred in admitting pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)") evidence that she had been planning a separate robbery the same day. She contends that the State violated

6

the notice requirement of Rule 404 (b), and that the evidence was not intrinsic or relevant to all of the purposes for which it was admitted.

As noted previously, Brown's co-indictee, Smith, pled guilty to all of the charges stemming from the incident. During trial, Smith testified that she lied when she told investigating officers that Dixon had set up the robbery, and testified that she had no idea who was involved in the robbery, and that she did not know that the robbery was going to occur.[3] Smith testified, however, that she, Brown, and co-indictee Walton were supposed to commit another robbery in South Carolina earlier on the same day of the incident at issue in this case, but that it never happened: "[Brown] knew of two people, two males. . . . She knew that they had a certain amount of money. She wanted to rob them. She told me about it. . . . [I]t never took place." Smith testified that "Brian, Janay and Brittany" were involved in the planning process of the South Carolina robbery, and that "Janay Brown, Brittany, Brian, Jerome and Mario" were going to be involved in the South Carolina robbery.

(a) Brown contends the trial court erred in admitting this other act evidence because it was not intrinsic and not relevant "to proving the added purposes of

---

[3] After Smith denied knowing who was involved in the robbery here, the State impeached her with testimony from her sentencing hearing, wherein she implicated herself, Mack, Greene, Walton, Brown, and Dixon in the robberies.

'participation in the conspiracy,' knowledge, opportunity, or identity." At the hearing, the State argued that the other act evidence "shows [Brown's] intent and shows her motive and it does go to the overall crime spree where she conspired with the other five co-defendants to rob two victims." The trial court admitted the evidence under Rule 404 (b) "to show motive, preparation and planning and intent," but that it is "not an intrinsic act showing a continuous course of conduct." At two instances before the other act evidence was introduced at trial, the trial court gave limiting instructions that the jury could consider the evidence to show knowledge or intent, participation and plan, or preparation and motive.

Because Brown's trial was held after January 1, 2013, Georgia's new Evidence Code governs this issue. *Bradshaw v. State*, 296 Ga. 650, 655 (3) (769 SE2d 892) (2015). We review decisions to admit evidence for a clear abuse of discretion. *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014). Rule 404 (b), which tracks Federal Rule of Evidence 404 (b),[4] governs the admissibility of evidence of other crimes or wrongs and provides:

---

[4] "Because these provisions of our new Evidence Code were borrowed from the Federal Rules of Evidence, our interpretation of these provisions is guided by the decisions of the federal appellate courts, especially the United States Supreme Court and the Eleventh Circuit." *Brewner v. State*, 302 Ga. 6, 13 (III) (804 SE2d 94) (2017).

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

See also *State v. Frost*, 297 Ga. 296, 300 (773 SE2d 700) (2015).

Rule 404 (b) does not apply, however, where the evidence of other crimes, wrongs, or acts are intrinsic to the charged offense. See *United States v. Nerey*, 877 F3d 956, 974 (VI) (11th Cir. 2017). See also *Satterfield v. State*, 339 Ga. App. 15, 19 (1) (a) (792 SE2d 451) (2016); *Baughns v. State*, 335 Ga. App. 600, 602 (1) (782 SE2d 494) (2016). "Evidence is intrinsic 'if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'" *Brooks v. State*, 298 Ga. 722, 726 (2), n. 11 (783 SE2d 895) (2016), citing *United States v. Utter*, 97 F3d 509, 513 (II) (B) (11th Cir. 1996). See also *United States v. Saunders*, 196 Fed.Appx. 873, 875-876 (11th Cir. 2006) ("evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral

and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury") (citation and punctuation omitted). "Whether offered under Rule 404 (b) or as intrinsic evidence, the [trial] court must find that the probative value of the proffered evidence is not substantially outweighed by unfair prejudice and that it meets the other requirements of [OCGA § 24-4-403 ("Rule 403")]."[5] *United States v. Ford*, 784 F3d 1386, 1393 (II) (C) (11th Cir. 2015). See also *United States v. Shabazz*, 887 F3d 1204, 1216 (II) (B) (1) (11th Cir. 2018); *Satterfield*, 339 Ga. App. at 20-21 (1) (b) (conducting Rule 403 balancing test on intrinsic evidence); *Curry v. State*, 330 Ga. App. 610, 614 (1) (768 SE2d 791) (2015) (noting that admissibility of Rule 404 (b) extrinsic evidence must satisfy Rule 403).

Brown contends that the other act evidence was not intrinsic or inextricably intertwined with the robbery at issue here because that robbery never took place, and involved different targets, a different time, and a different location from the charged

---

[5] Rule 403 allows a trial court the discretion to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless prevention of cumulative evidence." OCGA § 24-4-403. See also *Favors v. State*, __ Ga. __ (2) (b) (Case No. S18A1394, decided March 4, 2019). It is recognized, however, that Rule 403 "is an extraordinary remedy which the trial court should invoke sparingly, and the balance should be struck in favor of admissibility." (Citation and punctuation omitted.) *Pierce v. State*, 302 Ga. 389, 395 (1) (d) (807 SE2d 425) (2017).

10

offense. We disagree. The evidence was probative, and inextricably intertwined with the robbery in this case and necessary to complete the story or chain of events explaining the context of the crime. Compare *Sanchez-Villa v. State*, 341 Ga. App. 264, 273 (1) (a) (799 SE2d 364) (2017) (evidence not intrinsic because lacked any demonstrable connection to the events of the night of defendant's arrest). The testimony also established the members of the group and confirmed that all five members were involved in both plans. See, e.g., *United States v. Gay*, 423 Fed.Appx. 873, 876 (II) (A) (11th Cir. 2011) (no abuse of discretion in admitting intrinsic evidence that defendant was part of a robbery crew that committed twenty uncharged robberies). It also confirmed the group's goal and explained how the conspiracy came about with an initial plan to commit the South Carolina robbery involving two men and money but ultimately transformed into the robbery of Grissett and Harris when they showed up flashing a large amount of cash.

To the extent Brown argues that the evidence should have been excluded under Rule 403 as unduly prejudicial because it was offered simply to suggest propensity, we disagree. As the Eleventh Circuit has noted: "In similar cases, we have refused to find that other acts evidence inextricably intertwined with the crimes charged should nonetheless be excluded as unduly prejudicial." *Shabazz*, 887 F3d at 1216 (II) (B) (1).

11

Here, the planned robbery was linked in time and circumstances with the charged robbery as they occurred within hours of each other and involved the same perpetrators conspiring together, "and we cannot say that it was dragged in by the heels solely for prejudicial impact."[6] (Citation omitted.) Id. See also *United States v. Springer*, 753 Fed.Appx. 821, 828 (III) (A) (11th Cir. 2018). Although the trial court admitted the evidence on other grounds, we nonetheless affirm: "A [trial] court's ruling on the admission of evidence will be upheld if the admission was proper on any ground; it is of no consequence that the trial court may have given the wrong reason for its admission." (Citation and punctuation omitted.) *Saunders*, 196 Fed.Appx. at 875 (affirming trial court's admission of evidence under Rule 404 (b) based upon finding that it was intrinsic evidence).

(b) Brown also argues that the State violated the notice requirement of Rule 404 (b). This argument is meritless. Because the other acts evidence was properly admitted as intrinsic to the charged crime, it is not subject to the notice requirements of Rule 404 (b). See OCGA § 24-4-404 (b) ("[n]otice shall not be required when the

---

[6] Nothing in this opinion or our opinion in *Williams v. State*, 342 Ga. App. 564, 567 (1) (804 SE2d 668) (2017), citing *United States v. McNair*, 605 F3d 1152, 1206 (VIII) (11th Cir. 2010), could or should be construed as implying that intrinsic evidence is not subject to the requirements of Rule 403.

12

evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crimes, motive, or prior difficulties between the accused and the alleged victim"). See also *United States v. Leavitt*, 878 F2d 1329, 1339 (IV) (A) (11th Cir. 1989) (notice requirement of Rule 404 (b) does not apply to intrinsic evidence); *Satterfield*, 339 Ga. App. at 19 (1) (a), n. 5.

3. Brown contends the trial court committed plain error in instructing the jury that it could consider the other act evidence for the purpose of determining Brown's participation in the conspiracy. Because Brown did not object to this charge, we review it for plain error.

> When a party fails to object to a jury charge or the omission of a charge during trial but raises the issue on appeal, this Court reviews the charge for plain error. The proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceeding.

(Citations and punctuation omitted.) *Simmons v. State*, 291 Ga. 705, 712 (9) (b) (733 SE2d 280) (2012). "If all three of these questions are answered in the affirmative, the appellate court has the discretion to reverse if the error seriously affects the fairness, integrity, or public reputation of the proceedings below. Satisfying all four prongs of

13

this standard is difficult, as it should be." (Citation and punctuation omitted.) *Marriott v. State*, 320 Ga. App. 58, 63 (2) (739 SE2d 68) (2013).

Brown cannot demonstrate plain error. The charge here is similar to the charge approved in *United States v. Cao*, 331 Fed.Appx. 687 (11th Cir. 2009), where the district court properly instructed the jury to consider the intrinsic evidence of defendant's involvement with a stolen car ring "only to 'establish the existence of a relationship' between [the defendant] and the other members of the conspiracy and not for any other use." Id. at 690 (I) (A). The charge here did not improperly imply that the jury could consider the evidence as evidence of Brown's guilt as to the *charged crimes*. Compare *Rivers v. State*, 236 Ga. App. 709, 712 (513 SE2d 263) (1999) (trial court improperly instructed the jury it could consider similar transaction evidence to prove crimes charged or an element of the offense).

4. Brown contends the evidence was insufficient to support her convictions because (a) Smith testified that she lied about Brown's involvement to secure a favorable plea deal and (b) Smith's testimony was uncorroborated. We disagree.

The testimony of a single witness is generally sufficient to establish a fact, unless the only witness in a felony case is an accomplice to the crime, in which case such testimony must be corroborated. See OCGA § 24-14-8.

14

Although a defendant may not be convicted on the uncorroborated testimony of an accomplice, only slight evidence of a defendant's identity and participation from an extraneous source is required to corroborate the accomplice's testimony and support the verdict. Sufficient corroboration may consist of either direct or circumstantial evidence which connects the defendant with the crime, tends to show his participation therein, and would justify an inference of the guilt of the accused independently of the testimony of the accomplice. And whether the State presents sufficient corroboration of the accomplice's testimony is peculiarly a matter for the factfinder to determine.

(Punctuation and footnote omitted.) *Vann v. State*, 322 Ga. App. 148, 150 (742 SE2d 767) (2013). See also *Rutledge v. State*, 298 Ga. 37, 37-38 (1) (779 SE2d 275) (2015).

Although the evidence corroborating Smith's accomplice testimony was slight, it was nonetheless sufficient to prove Brown's involvement in the robbery. Brown knew the victims possessed a large sum of money because Grissett acknowledged at trial that when he first saw "Brian Dixon and the females" at the apartment complex, he had his money "out." Grissett also testified that when he initially spoke to Smith, Brown, and Walton, they told him they were planning to rob someone. Grissett did not identify which woman made the statement, but he implied that it was Brown when he testified as follows: "Me not knowing it was me intentionally to be robbed, I gave the young lady a hundred dollars, whoever the young lady was. If I'm not mistaken,

15

it was Janay [Brown]. I gave her a hundred dollars. I said you [don't] have to hit a lick, you know." Grissett also testified that the robbery occurred in Brown's apartment, and that Brown entered her apartment where Mack and Greene lay in wait two minutes before he did, and that once Harris realized they were being ambushed and attempted to back out of the apartment, one of the women pulled him back in. The neighbor testified that she lived next door to Brown and that she could hear shots "bouncing off of the door like somebody was shooting each other." The neighbor further testified that after the robbery, she observed one of the victims running from the scene and heard him exclaim into his cellphone that he had been set up.

The evidence was sufficient to enable a rational trier of fact to find Brown guilty of all of the crimes of which she was convicted beyond a reasonable doubt. See *Jackson v. Virginia*, supra. Any evidentiary weaknesses relate to the credibility and weight of the evidence, which are matters for the jury to resolve. See *Vann*, 322 Ga. App. at 150. Similarly, although Smith recanted at trial the testimony she gave at her sentencing hearing, it was for the jury, and not this Court, to resolve any conflicts in Smith's testimony and assess her credibility. See *Wells v. State*, 281 Ga. 253, 254 (1) (637 SE2d 8) (2006). The trial court did not err in denying Brown's amended motion for new trial on this basis.

*Judgment affirmed. Miller, P. J., and Goss, J., concur.*