296 Ga. 394
FINAL COPY

S14A1409.  TURNER v. THE STATE.

BENHAM, Justice.

Appellant Quanitta Yvette Turner appeals her convictions related to the death of her five-week-old baby.[1]  Appellant asserts that her convictions should be overturned because she contends the evidence was insufficient and because she contends one of her statements to police was involuntary.  For reasons set forth below, we affirm.

1. The evidence viewed in a light most favorable to the verdict shows that on the day in question, appellant called 911 to report that her baby was not breathing.  When paramedics arrived, the baby was not breathing and was cold to the touch.  At the scene, appellant told authorities she believed she had rolled over on the baby who was sleeping in the bed with her during the night.

---

[1]The crimes occurred on November 19, 2007.  On November 5, 2010, a Newton County grand jury indicted appellant on charges of malice murder, felony murder, aggravated assault, and cruelty to children in the first degree.  Appellant was tried before a jury on August 28-29, 2012.  The jury acquitted her of malice murder, but returned guilty verdicts on all remaining charges.  On October 23, 2012, the trial court sentenced appellant to life for felony murder and twenty years to serve concurrently for cruelty to children in the first degree.  The aggravated assault count merged with the felony murder conviction.  Appellant moved for a new trial on November 1, 2012, and amended the motion on January 31, 2014.  The trial court denied the motion for new trial, as amended, on March 31, 2014.  Appellant filed her notice of appeal on April 4, 2014, and the case was docketed to the September 2014 term of this Court for a decision to be made on the briefs.

Although life-saving measures were taken and the baby was transported to the hospital, the baby remained unresponsive and was pronounced dead. The medical examiner testified that the baby had non-fatal injuries to her body at the time of death — an abrasion to her lip, a bruise under her left eye, and bleeding under the skin on the left side and the middle of her back. The medical examiner said the eye injury occurred within three days of the child's death and the back injury was within 12 hours of death. The medical examiner concluded the injuries were inflicted upon the baby, but opined that they were not fatal and that he could not determine the cause and manner of death in 2007 when the autopsy was first performed. Police failed to follow-up on the case, and it lapsed for three years.

In 2010, police reopened the investigation when the baby's father came forward with information. He testified that appellant told him on at least three different occasions that she had held her hand over the child's nose and mouth until the child stopped crying and/or stopped breathing; however, the father said he did not believe appellant at the time she made the statements. In July 2010, the father posted two comments on his Facebook page stating that appellant had killed their baby. In August 2010, appellant took out a restraining order against

2

the father, and he in turn reported her to the police in regard to their child's death. Police re-launched their investigation and interviewed the father and appellant. Despite authorities' suspicions that the father was being vindictive, the father never wavered from his story that appellant told him she killed the baby on three separate occasions. During appellant's first interview with police, appellant initially stated she woke up to find the baby was not breathing, leaving out the detail she gave authorities in 2007 that she had rolled over on the child during the night. When police continued to question her, appellant admitted that she placed her hand over the baby's mouth and nose until the child stopped breathing and went back to sleep, rolling over on the child after she was already deceased. During a subsequent interview, appellant admitted striking the baby six to eight times with a television remote control because the baby would not stop crying. Both interviews, which were video-recorded, were played for the jury.[2]

In 2007, the medical examiner originally listed the cause and manner of the child's death as undetermined. At trial, the medical examiner explained that he did not rule the death as Sudden Infant Death Syndrome (SIDS) or as Sudden

[2]The second interview was also audio recorded with a hand-held recorder. Portions of the audio recording were played for the jury in addition to the full video recording of the interview.

Unexpected Infant Death (SUID) because of the recent injuries to the baby's body.[3] In 2010, upon reviewing appellant's interviews with police, the medical examiner amended the autopsy report, and he ruled the cause of death to be smothering and the manner of death a homicide.

The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which she was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends the admissions she made during her second interview were involuntary because the investigator made misrepresentations about her Fifth Amendment right not to incriminate herself by testifying at trial. The statements the officer made during the second interview were to the effect that appellant should tell the investigator how the baby received the injuries discovered on her body because it would be more difficult for appellant to explain them later to a jury or judge and that the court would "drill" appellant on such issues. According to appellant, the investigator's statements vitiated the voluntariness of her admissions. We disagree.

---

[3]According to the medical examiner, SIDS and SUID deaths do not involve any bodily injury.

A suspect's custodial statements are rendered involuntary and inadmissible after receiving Miranda[4] warnings if the statements are the product of the slightest hope of benefit or the remotest fear of injury. See former OCGA § 24-3-50.[5] A "hope of benefit" relates to lesser charges or a lesser sentence and a "fear of injury" involves physical or mental torture. See Smith v. State, 295 Ga. 283 (1) (a)-(b) (759 SE2d 520) (2014). "A detective's statement of opinion as to how a judge and jury might view a suspect's lack of cooperation does not 'relate to the charge or sentence facing the suspect' [cit.], and does not constitute physical or mental torture which makes a statement involuntary under OCGA § 24-3-50." Wilson v. State, 285 Ga. 224 (3) (675 SE2d 11) (2009). As in Wilson, the investigator's statements at issue here do not concern a charge or sentence facing appellant and do not constitute physical or mental torture. Accordingly, appellant's statements during her second interview with police were voluntary and admissible.

Judgment affirmed. All the Justices concur.

---

[4] Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[5] The corresponding Code section in the new Evidence Code is OCGA § 24-8-824.

Decided January 20, 2015.

Murder. Newton Superior Court. Before Judge Ott.

<u>Anthony S. Carter</u>, for appellant.

<u>Layla H. Zon, District Attorney, Melanie M. Bell, Candice L. Branche, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vicki S. Bass, Assistant Attorney General</u>, for appellee.