**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 5, 2016**

# In the Court of Appeals of Georgia

A15A2242. BAUGHNS v. THE STATE.                    JE-082C

ELLINGTON, Presiding Judge.

A Clarke County jury found Justin Baughns guilty beyond a reasonable doubt of aggravated assault, OCGA § 16-5-21 (b) (2) (with a deadly weapon); and four counts of burglary in the first degree, OCGA § 16-7-1 (b). Following the denial of his motion for a new trial, Baughns appeals, contending that the trial court erred in admitting evidence of other acts and in admitting a custodial statement.[1] For the reasons explained below, we affirm.

---

[1] Because this case was tried after January 1, 2013, Georgia's new Evidence Code applies. See Ga. L. 2011, pp. 99, 214, § 101.

Viewed in the light most favorable to support the verdict,[2] the evidence shows the following. In the last two weeks of November 2012, Baughns and two other young men committed a string of burglaries in Athens-Clarke County. In most of them, the burglars gained entry by using a tool to pry around a rear door or window, sometimes kicking in the door, and stole computers, televisions, and jewelry. Baughns participated in the burglaries primarily as the driver, and he sold items stolen in the earlier burglaries to a pawn shop. From one burglary on November 26, the thieves obtained the victim's handgun. One of Baughns' accomplices carried that handgun during another burglary that same day, and, when the homeowner confronted the burglars with a knife, he shot and killed the man. The burglars left behind a tire iron that was consistent with the pry marks from several of the earlier burglaries.

The State charged the three men in a single indictment, which included six counts of burglary that named Baughns as a perpetrator[3] and five counts of burglary

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). This recitation of facts is based in part on the evidence which Baughns contends the trial court erroneously admitted. We have rejected his evidentiary challenges for the reasons discussed below.

[3] Specifically, these burglaries were of 295 Old Monroe Road on November 14 , 170 Vaughn Road, Apartment 2, on November 19 , 2006 South Milledge Avenue

that did not name Baughns as a perpetrator.[4] At Baughns' separate trial, the State, over Baughns' objection, introduced evidence of all eleven burglaries. Also over Baughns' objection, the State offered evidence of an inculpatory statement Baughns gave while in custody on December 12, 2012, and the State played a videorecording of the interview for the jury. In that statement, Baughns admitted picking up one of his co-defendants in his car and dropping him off at the time and location of one of the burglaries and, in a borrowed car, driving both of his co-defendants to the location of the last burglary and waiting for them in the car.

1. Baughns contends that the five burglaries charged in the indictment that did not name him as a perpetrator were extrinsic acts that were irrelevant to his guilt as to the six counts of burglary that did name him. He argues that the evidence had at best a very slight probative value in explaining how one of his co-defendants came into custody, which value was substantially outweighed by the prejudicial effect of

on November 20-21, and 502 Rustwood Drive, 130 Fair Oaks Drive, and 400 Jefferson River Road on November 26. Note: the jury found Baughns not guilty of the Rustwood Drive and Fair Oaks Drive burglaries.

[4] Specifically, these burglaries were of 212 Sleepy Creek Drive on November 16-23, 125 Cardinal Creek Place on November 20-21, 200 Timothy Road on November 23-25, 263 Arch Street on November 24, and 195 Pepperidge Lane on November 25-26.

3

the evidence, and that the evidence was therefore inadmissible under OCGA §§ 24-4-403[5] and 24-4-404 (b).[6] "Evidentiary rulings are reviewed under an abuse of discretion standard[.]" (Citation omitted.) *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014).

In response to Baughns' objection at trial, the State argued that Baughns and his co-defendants were indicted as co-conspirators in "a burglary spree" and that the evidence would show that for each of the burglaries Baughns would drive the others to the residences to be burgled. The trial court determined that, even if the evidence of the uncharged burglaries did not directly implicate Baughns, those burglaries arose out of the same burglary spree as the charged burglaries and therefore the evidence was admissible as being intrinsic to the charged offenses.

Under longstanding Georgia law, all the acts and circumstances surrounding and constituting the res gestae are admissible, despite the fact that they may reflect

---

[5] OCGA § 24-4-403 provides: "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[6] OCGA § 24-4-404 (b) provides, except as otherwise provided, "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith."

4

poorly on a defendant's character.[7] This rule carried forward to the new Evidence

Code under the concept of "intrinsic facts" evidence, as compared to evidence of

---

[7] See, e.g., *Nash v. State*, 285 Ga. 753, 754 (2) (a) (683 SE2d 591) (2009) ("Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial.") (citation and punctuation omitted); *Roberts v. State*, 282 Ga. 548, 551 (6) (651 SE2d 689) (2007) (Evidence that, prior to shooting the victim, the defendant purchased marijuana from him was admissible as part of the res gestae because the defendant learned from that transaction that the victim was carrying money.); *Igidi v. State*, 251 Ga. App. 581, 583 (1) (554 SE2d 773) (2001) ("[T]he state is entitled to present evidence of the entire res gestae of the crime. Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial. This is true even if the defendant's character is incidentally placed in issue.") (punctuation and footnote omitted); see also Paul S. Milich, Ga. Rules of Evidence, § 11:3 (database updated October 2015) ("[A]ll the acts and circumstances surrounding and constituting the res gestae were admissible [under the old Evidence Code], despite the fact that they may reflect poorly on a party's character.") (footnote omitted).

5

"extrinsic acts" which are generally inadmissible pursuant to OCGA § 24-4-404 (b).[8]

Under relevant federal authority,[9]

> evidence is intrinsic to the charged offense, and thus does not fall within Rule 404 (b)'s ambit, if it (1) arose out of the same transaction or series of transactions as the charged offense; (2) is necessary to complete the story of the crime; or (3) is inextricably intertwined with the evidence regarding the charged offense.

---

[8] As Professor Milich explained:

The Federal Rules of evidence retired the term "res gestae" in . . . [the] character rule context[ ] and the new 2013 Georgia rules do so as well. However, the essence of the doctrine in the context of the character rule remains the same with new terminology. Facts that are "intrinsic" to or "inextricably intertwined" with the events at issue at trial are generally admissible to give the factfinder a truer, contextual view of the material facts in the case. All of the facts and circumstances surrounding the crime for which the accused is charged are admissible as "intrinsic" despite the fact that the evidence may incidentally reflect poorly on the accused's character. . . . [For example,] when the crime charged is part of a crime spree or "rampage" the entire chain of crimes can be proved at trial, even if they were not all charged, as they are all intrinsic to the offense.

(Footnotes omitted.) Paul S. Milich, Ga. Rules of Evidence, § 11:3.

[9] See *State v. Brown*, 333 Ga. App. 643, n. 21 (777 SE2d 27) (2015) (explaining extent to which Georgia's courts look to federal evidence jurisprudence in applying our new Evidence Code).

(Citation and punctuation omitted.) *United States v. Nowak*, 370 Fed. Appx. 39, 41 (I) (11th Cir. 2010). See also *United States v. Edouard*, 485 F3d 1324, 1344 (II) (C) (11th Cir. 2007) (accord). Moreover,

> evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

(Citations omitted.) Id.

In this case, the uncharged offenses were part of a crime spree committed by a burglary crew of which Baughns was a part, even if there was no evidence that he directly participated in those offenses. All of the offenses were committed in a similar way, within a two-week period and in the same area of Athens-Clarke County, and included overlapping participants. Consequently, the trial court did not abuse its discretion in admitting evidence of the uncharged burglaries. *Carter v. State*, 269 Ga. 891, 892 (3), (4) (506 SE2d 124) (1998); *Rust v. State*, 264 Ga. App. 893, 897 (1) (592 SE2d 525) (2003); *Sullivan v. State*, 242 Ga. App. 839, 840-841 (3) (531 SE2d 367) (2000); *Vick v. State*, 211 Ga. App. 735, 737 (2) (440 SE2d 508) (1994); *Baird v. State*, 207 Ga. App. 44, 44-45 (1) (427 SE2d 37) (1993).

7

2. Baughns contends that the record shows that his December 12, 2012 custodial confession was induced by a hope of benefit and, therefore, that the trial court abused its discretion in admitting that confession.

"No person shall be compelled to give testimony tending in any manner to be self-incriminating." Ga. Const. 1983, Art. 1, § 1, ¶ XVI. OCGA § 24-8-824 provides: "To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." The following Code section, OCGA § 24-8-825, provides: "The fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of collateral benefit shall not exclude it." The rules set out in OCGA §§ 24-8-824 and 24-8-825 "have appeared together since Georgia's first code, see Code of 1863, §§ 3716-3717, and they are carried forward without any substantive change in the new Georgia evidence code that [took] effect on January 1, 2013." (Citations omitted.) *Brown v. State*, 290 Ga. 865, 868, n. 1 (725 SE2d 320) (2012).[10] Our appellate decisions have established that the phrase "the slightest hope of benefit" in OCGA § 24-8-824 is a term of art which must be understood in conjunction with the limitations set out in OCGA § 24-8-825 and "does not encompass every conceivable

---

[10] See also *State v. Chulpayev*, 296 Ga. 764, 771 (2) (770 SE2d 808) (2015).

8

benefit that the police may offer a suspect in an effort to induce him to confess."

*Brown v. State*, 290 Ga. at 868 (2) (b). "It has also long been understood that 'slightest hope of benefit' refers to promises related to reduced criminal punishment – a shorter sentence, lesser charges, or no charges at all." (Citations and punctuation omitted.) *State v. Chulpayev*, 296 Ga. 764, 771 (2) (770 SE2d 808) (2015).[11] "The promise of a benefit that will render a confession involuntary under [OCGA § 24-8-824 (former] OCGA § 24-3-50[)] *must* relate to the charge or sentence facing the

---

[11] *State v. Ray*, 272 Ga. 450, 451-452 (2) (531 SE2d 705) (2000) (Where interrogators "posited a 'hypothetical' to [the defendant] indicating that when a murder is committed by two individuals, the party willing to testify against the other would have the possibility of not facing the death penalty . . . [and] intimated that [he] could save himself from execution by telling the officers truthfully about the crimes[,]" and when the defendant asked, "what would I get if I give the other guy up?", an officer replied, "Possibly – here's what I can tell you. Years of freedom[,]" the defendant's ensuing confession was inadmissible as having been induced by a hope of benefit.); *State v. Robinson*, 326 Ga. App. 63, 66 (755 SE2d 869) (2014) (Where an interrogator told a suspect, who knew that his alleged accomplices were also being interviewed, "[t]he person that cooperates is the person that gets help[,]" that statement, viewed under the totality of the circumstances, did appear to offer the defendant "some hope of benefit – i.e., it indicates that if [he] cooperated truthfully with police, he would get a lighter sentence than his accomplices."); *Askea v. State*, 153 Ga. App. 849, 851-852 (3) (267 SE2d 279) (1980) ("[T]he interrogating officer's remark that 'it (i.e., telling the truth) would probably help him in court' [held] out at least some hope for reward by special consideration if the suspect cooperate[d]" and rendered the confession inadmissible.).

9

suspect." (Footnote omitted, emphasis supplied.) *White v. State*, 266 Ga. 134, 135 (3) (465 SE2d 277) (1996).

Thus, our courts have held that it is not a promise that relates to the charge or sentence facing the suspect under OCGA § 24-8-824 (and its predecessor statutes) where an interrogator merely promises to tell the prosecutor or the court that the suspect cooperated, accepted responsibility, was justified in connection with the offenses at issue, etc. This is so regardless whether the interrogator's promise to relate such information might encourage the suspect to hope that, ultimately, other actors in the criminal justice system will be inclined to be more lenient – the prosecutor in drawing up charges, the finder of fact in determining guilt, the judge in imposing sentence, etc.[12] "Whether a statement was made voluntarily is to be determined by

---

[12] *Turner v. State*, 296 Ga. 394, 395-396 (2) (768 SE2d 458) (2015) (no hope of benefit where an interrogator told the suspect that she should tell him how her baby received the injuries discovered on her body because it would be more difficult for her to explain them later to a jury or judge and that the court would drill her on such issues); *Taylor v. State*, 274 Ga. 269, 273-274 (2) (553 SE2d 598) (2001) (no hope of a benefit where an investigator told the suspect, in the context of her concerns about custody of her children, that he would help her in every way he could, that it might look good to the judge if she admitted her role in the crimes rather than lying, and that she had a golden opportunity to help herself), overruled in part on other grounds, *State v. Chulpayev*, 296 Ga. at 783 (3) (b); *Gilliam v. State*, 268 Ga. 690, 692 (3) (492 SE2d 185) (1997) (no hope of a benefit where interrogator told the suspect that it would help if he told the truth and that the judge would know that he confessed); *State v. Jackson*, 332 Ga. App. 356, 357 (772 SE2d 804) (2015) (no hope

10

assessing the totality of the circumstances. Where the facts surrounding a police interview are undisputed because the recorded interview is part of the appellate record, our review of the trial court's admissibility ruling is de novo." (Citations and punctuation omitted.) *Johnson v. State*, 295 Ga. 421, 424 (2) (761 SE2d 13) (2014).

In arguing that his confession is inadmissible as having been induced by a hope of benefit, Baughns points to the following exchanges that occurred during the December 12, 2012 interview, before he admitted that he drove his two co-defendants to the deceased victim's home :

| | |
|---|---|
| Investigator: | You had nothing to gain when we first spoke. You had nothing. You didn't have warrants signed on you for murder when we first spoke. You have it now. OK? It's a real thing. It's not like it's made up. . . . |
| | To me this is the saddest part, OK? Your daughter is gonna grow up without a father. Pretty much the same way you grew up without a father. Which is horrible. And I've got |

of a benefit where an investigator told the suspect that, if he were not honest with the police, he would not be helping his child, who was going to need both parents, and that the only way out of jail and to look to the future was to be honest); *Cooper v. State*, 257 Ga. App. 896, 898 (1) (572 SE2d 417) (2002) (no hope of benefit where an investigator told the suspect that he was going to be the prosecuting officer and that he would like to be able to tell the judge that the suspect was honest and cooperated with him); *Frei v. State*, 252 Ga. App. 535, 537-538 (2) (b) (557 SE2d 49) (2001) (no hope of a benefit where an investigator told the suspect that he would let the district attorney know that he had cooperated and that he would do what he could to help the suspect).

to live with myself to be the person that's making that happen. . . .

I have to be the one to tell your mom that her baby is going to prison. For life. I have to be the one to do that. . . .

I want to be able to say that [Baughns] was honest with me. He cooperated with me and he helped out. And he tried to get justice for [the deceased victim's] family so that [Baughns] can give *his* family peace of mind knowing that he did the right thing and that he'll be with them soon. As opposed to saying that [Baughns is] a hardcore mother fucker that's going to prison for the rest of his life. . . .

Baughns: I hope [me talking will] change something, man.

Investigator: It's gonna change something! . . .

Baughns: I don't want to go to jail for the rest of my life, but they said I did something. . . .

Baughns: But [the other two perpetrators are] gonna get the same amount of time and they killed [the victim].[13]

Investigator: Bullshit! Bullshit! That's total bullshit! You're gonna try and tell me that somebody [who is] sorry for what [he] did is gonna get the same time as a cold-blooded killer?!

In other exchanges throughout the interview, investigators repeatedly framed their inquiries in terms of what they wanted to be able to tell the judge. Any suggestions

---

[13] The trial court transcribed this response, which occurred after an investigator began explaining about the liability of parties to a crime, slightly differently, as "But that gets the same amount of time that gets for the killing."

of a possible benefit were either completely nonspecific (e.g., "help yourself" ) or along the lines of allowing Baughns to have more credibility with the jury for having been honest early. Under the totality of the circumstances, we conclude that any benefits promised by the investigators to induce Baughns' confession did not relate to the charges or sentence he was facing in such a way as to render the confession inadmissible under OCGA § 24-8-824.[14]

*Judgment affirmed. Dillard and McFadden, JJ., concur*.

---

[14] See cases cited in footnote 10, supra.