**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 23, 2019**

# In the Court of Appeals of Georgia

A19A0903. EASLEY v. THE STATE.

REESE, Judge.

A jury found Vincent Easley, Jr. ("the Appellant") guilty of armed robbery, false imprisonment, theft by taking property valued at $5,000 or more, fleeing or attempting to elude a police officer, and possession of cocaine[1] arising from actions that allegedly occurred on December 11, 2013.[2] The trial court sentenced the Appellant to serve a total of 38 years, with the first 20 years in confinement and the remaining years on probation. The Appellant appeals from the denial of his motion

---

[1] See OCGA §§16-8-41 (a); 16-5-41 (a); 16-8-2; 16-8-12 (a) (1) (B); 40-6-395 (a); 16-13-30 (a).

[2] Initially, the Appellant appealed to the Supreme Court of Georgia. The Supreme Court transferred the appeal to this Court because "[the Appellant] was not convicted of murder, and no other basis for jurisdiction in [the Supreme] Court appear[ed] in the record."

for new trial, arguing that the trial court erred in failing to grant his motion for a continuance and in admitting improper character evidence, and that he was denied the effective assistance of counsel. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[3] the record shows the following facts. On December 10, 2013, at around 6 p.m., the victim, T. D. met a young lady, later identified as Terrineka Watts ("Watts"), at a gas station. Watts gave T.D. her phone number, and T. D. called Watts at around 5:00 a.m. the next day to ask if he "could stop by and see her for a second." Watts told him "[y]es[,]" and she gave him an address. He traveled to the address, discovered it was a hotel, and called Watts to make sure he was in the right place. Watts gave T. D. a room number, and upon reaching the room, Watts opened the door. T. D. testified that he entered the room, sat on the bed, and talked to Watts for about ten minutes. T. D. admitted that they began "flirting with each other[,]" and Watts told him that "she would do something for some money." T. D. denied that he visited Watts with the intention to "pay for anything[.]"

---

[3] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

2

According to T. D., two men emerged from the bathroom, with one of the men pointing a gun at T. D.'s face. At trial, T. D. identified the Appellant as one of the two men, and he testified that the other man, later identified as Myron Sterling ("Sterling"), was the person who held the gun to his face. Sterling instructed T. D. to "take [his] pants off and give [them to Sterling]." Sterling emptied T. D.'s pants pockets, which contained "around $200" and his license, debit card, cell phone, and car keys.

T. D. testified that the Appellant "walked up to [him] and demanded [his] watch, and [the Appellant] snatched [T. D.'s] necklace off [T. D.'s] neck." After T. D. gave the Appellant his watch, the Appellant punched him in the face.

The Appellant and Sterling told T. D. to sit on one of the beds while Sterling pointed the gun at him. T. D. sat on the bed, and the Appellant punched him in the face again. Sterling then told T.D. to get up, and both Sterling and the Appellant told T. D. to "get in the closet." T. D. went into the closet, and both men closed the closet door. While in the closet, T. D. heard the two men "pushing things up against the wall," and one of the men said to T. D. that they would "kill [him]" if he came out of the closet. He also heard one of the men say, "I'm going to the car, I'm going to find the car."

3

T. D. remained in the closet until he did not hear anything further. Once he pushed the closet door open, T. D. put his pants back on, left the hotel room, and went to the hotel's front desk. A person at the front desk called the police. T. D. testified that he did not recover any of his property.

The Appellant testified at trial that Sterling picked him up at around 8 p.m. on December 10, 2013, and that the Appellant intended to "catch up [with his] old friend[.]" Sterling took the Appellant to a hotel room, where Watts was "just laying on the bed." The Appellant admitted that the three of them "[s]moked marijuana and did cocaine." While the Appellant was in the hotel room, a phone rang. The Appellant testified that Watts answered the phone and, after finishing a conversation with the caller, the Appellant and Sterling "exited the room because [Watts] had a dude coming over there to pay for sex with her." As the two men left the room, a man that was going into Watts's room "turned around and walked away." When the man did not return to Watts's room after about ten minutes, Sterling and the Appellant re-entered Watts's room.

At around 6:20 a.m., the phone rang again, and Watts answered it. The Appellant testified that he and Sterling left the room and went into the bathroom "[because Watts] had another male that wanted to pay for sex." The Appellant further

4

testified that he and Sterling left the bathroom when "[the male visitor] went over the time limit[.]" The Appellant testified that, upon entering the hotel room, he could not tell if Watts and T. D. were having sexual intercourse. The Appellant further testified that Sterling "just ask[ed] [T. D.] for additional money because [T. D. had gone] over the time." The Appellant denied that anyone had a gun or hit T. D.

The Appellant testified that Sterling took the victim's car keys and that he (the Appellant) told Sterling, "[g]ive me the car keys so I can go home." The Appellant testified that he "grabbed the car keys" and Sterling told him to "get the girl['s] clothes and go the car[.]" The Appellant further testified that he heard someone tell T. D. to get into the closet, but he did not see what happened because he (the Appellant) was in the parking lot. He testified that, after about 15 minutes, Sterling and Watts came to the car and got in, and the Appellant drove them away.

The Appellant testified that, after driving about 15 minutes, he dropped Watts and Sterling off at a gas station. The Appellant was stopped by police at another gas station, but he fled in the car. After leading the police on a "high speed chase[,]" the Appellant eventually fled from the car and hid in a pile of leaves, behind a house. He was apprehended by police after being bitten by a K-9 dog.

During his custodial interview, the Appellant told the detective assigned to investigate this case that his "friend[,]" "Royal," also known as "Jeremy[,]" was in the hotel room serving as Watts's "protection." The Appellant described Royal as someone with whom he had been in jail in Gwinnett County. The redacted custodial interview was played for the jury. The detective testified at trial that, based on his investigation, the Appellant and Sterling had never been in jail together.

At trial, the Appellant testified that he mistakenly thought Sterling's "street name" was Royal, and he admitted that he had lied to the detective about being "in jail with the person [the Appellant] knew to be Royal[.]" The Appellant admitted taking the car and possessing cocaine, but denied having a gun, committing armed robbery or kidnapping anyone.

Following the jury trial, the Appellant filed a motion for new trial. After conducting a hearing, the trial court denied the Appellant's motion. This appeal followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[4] and does not

---

[4] 443 U. S. at 319 (III) (B).

6

weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[5]

"The standard of *Jackson v. Virginia*[6] is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged."[7] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant argues that the trial court abused its discretion in denying his motion for a continuance. Specifically, the Appellant contends that the trial court should have granted the continuance because the State untimely served him with a "small portion" of Sterling's two-and-a-half-hours-long custodial interview three days prior to trial.[8] He argues that the continuance could have provided the Appellant with

---

[5] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and footnote omitted).

[6] 443 U. S. at 319 (III) (B).

[7] *Bautista v. State*, 305 Ga. App. 210, 211 (1) (699 SE2d 392) (2010).

[8] OCGA § 17-16-4 (a) (3) states in relevant part:
The prosecuting attorney shall, no later than ten days prior to trial, . . . disclose to the defendant and make available for inspection, copying, or

7

"cross[-]examination questions for [T. D.,]" and allow him time to "investigate what [Sterling] stated in his interview." We find no abuse of discretion.

Under OCGA § 17-8-22, "[a]ll applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require."

> In reviewing a trial court's denial of a motion for a continuance, this Court will not reverse a trial court's decision on a motion for continuance except upon a clear abuse of the trial court's discretion. Moreover, to be entitled to a new trial based upon the denial of his motion for a continuance, the defendant has the burden to show that he was harmed by that denial.[9]

The record shows that, on June 8, 2015, the Appellant filed a motion for a continuance because trial counsel had received, less than ten days before trial, a written summary of a recorded custodial interview with Sterling. On the morning of

___

photographing any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the state or prosecution and that portion of any written record containing the substance of any relevant oral statement made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer or member of the prosecuting attorney's staff.

[9] *Williams v. State*, 317 Ga. App. 248, 256 (3) (730 SE2d 726) (2012) (citation and punctuation omitted).

8

the first day of trial, the State served the Appellant with a video recording of the entire two-and-a-half-hours-long custodial interview of Sterling. The trial court recessed the proceedings to allow trial counsel time to watch the entire interview.

The trial court reconvened the proceeding three hours later and held a hearing on the Appellant's motion for a continuance, during which his trial counsel stated: "This statement by [Sterling] is the only . . . statement that contradicts our theory of the defense as it stands now. And it's going . . . to affect how we present our case, it's going to affect whether or not [the Appellant] decides to testify." The trial court responded, "I don't understand how it can affect the presentation of your case if I'm not going to allow it into evidence." Trial counsel responded, "I also heard a few things in the video that . . . I would really like to have additional time to follow up on that may be helpful to [the Appellant's] case [such as] Sterling stat[ing] that . . . he didn't see anybody actually take anything from [the victim]." Citing OCGA § 17-16-6, the trial court ruled that the State could not introduce evidence contained in the written summary or the video of Sterling's custodial interview.[10] In denying the

---

[10] OCGA § 17-16-6 states, in pertinent part:
If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance,

9

Appellant's motion for a continuance, the trial court ruled that Sterling's custodial video was "clearly inculpatory[, as to the Appellant,]" and that the Appellant had failed to present sufficient grounds justifying a continuance.

At the motion for new trial hearing, the Appellant did not present the testimony of any potential witnesses or offer any other evidence to show that any prejudice resulted from the denial of his motion for continuance.[11] Thus, the Appellant's argument that the continuance could have provided the Appellant with additional cross-examination questions for the victim or time to investigate Sterling's custodial statement is unsupported by the record. Based on the foregoing, the Appellant has failed to meet his burden showing that he was harmed by the denial, and trial court did not abuse its discretion in denying the motion for a continuance.[12]

2. The Appellant argues that the trial court abused its discretion in admitting improper character evidence of him by allowing the State to present evidence of: (a)

---

or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

[11] See *Williams*, 317 Ga. App. at 256 (3).

[12] See id.

his previous incarceration; and (b) outstanding warrants for his arrest without notice or a hearing as required by OCGA § 24-4-404 (b).[13] We disagree.

(a) *Previous incarceration.*

During trial, outside the presence of the jury, the trial court held a hearing on the admissibility of portions of the Appellant's custodial interview. During the interview, the Appellant stated that his friend, Royal (also known as Jeremy), was in the hotel room on December 10, and that he and Royal had previously been incarcerated together. The trial court admitted that portion of the Appellant's statement because the "prejudice does not substantially outweigh the probative value of the two [the Appellant and Sterling] being friends together and being in jail for that

---

[13] OCGA § 24-4-404 (b) states:
Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

11

brief mention." The detective subsequently testified at trial that the Appellant and Sterling were never in jail together.

At trial, the Appellant admitted that he lied to the detective when he said that Sterling was not in the hotel room. He also testified that, at the time, he thought Sterling's street name was Royal. In the order denying the Appellant's motion for a new trial, the trial court ruled that "the challenged evidence was not impermissible character evidence[, but instead it] was evidence showing [the Appellant's] association with the other male in the hotel room."

As a general rule, "[a] trial court's decision under OCGA §§ 24-4-403[14] and 24-4-404 (b) to exclude or admit other acts evidence will be overturned only where there is a clear abuse of discretion."[15] Moreover, "although evidence may incidentally put [the Appellant's] character in issue or be prejudicial, it may be admitted if otherwise relevant."[16]

---

[14] See OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

[15] *State v. Dowdell*, 335 Ga. App. 773 (783 SE2d 138) (2016) (citations and punctuation omitted).

[16] *Lanham v. State*, 345 Ga. App. 657, 664 (1) (e) (813 SE2d 184) (2018) (citation and punctuation omitted).

Thus, because the Appellant's brief statement about being in jail with Royal, and that Royal was Sterling's street name, was relevant and admissible to show that the men knew each other prior to the crimes at issue, the trial court did not abuse its discretion in admitting the evidence.[17] And, even if the Appellant's passing reference to Sterling and he being incarcerated together was improperly admitted, the Appellant has failed to demonstrate reversible error.[18]

(b) *Outstanding arrest warrants*.

The Appellant also argues that the trial court erred by admitting evidence of the Appellant's outstanding arrest warrants for shoplifting, arguing that the trial court failed to provide notice and a hearing, as required by OCGA § 24-4-404 (b). Specifically, the Appellant claims that the court erred in admitting evidence that, during his custodial interview, the Appellant stated that he decided to flee from the police in the stolen vehicle after dropping off Sterling and Watts because he had outstanding warrants. This argument is unavailing.

---

[17] See *Jennings v. State*, 285 Ga. App. 774, 778 (4) (648 SE2d 105) (2007) ("Mere mention that a defendant has been in jail falls short of placing his character at issue.") (punctuation and footnote omitted).

[18] See id. at 778-779 (4).

"Evidence is intrinsic to the charged offense, and thus does not fall within [OCGA § 24-4-404 (b)'s] ambit, if it (1) arose out of the same transaction or series of transactions as the charged offense; (2) is necessary to complete the story of the crime; or (3) is inextricably intertwined with the evidence regarding the charged offense."[19]

Based on the foregoing, the Appellant's statement was intrinsic evidence because his motive for fleeing from the police was "inextricably intertwined" with the evidence of the charged crime of fleeing or attempting to elude a police officer.[20] Thus, a hearing pursuant to OCGA § 24-4-404 (b) was not required.[21] Accordingly, the trial court did not abuse its discretion in admitting the evidence at issue.

---

[19] *Baughns v. State*, 335 Ga. App. 600, 602 (1) (782 SE2d 494) (2016) (citations and punctuation omitted).

[20] See id.

[21] See *Gibbs v. State*, 340 Ga. App. 723, 727 (2) (b) (798 SE2d 308) (2017) (In a case where an officer shot the defendant in the chest after the defendant had tried to run over the officer and while the defendant was attempting to flee the scene, a nurse's intrinsic testimony that the defendant self-reported that he smoked marijuana earlier that day was intrinsic evidence and was not improper character testimony subject to OCGA § 24-4-404 (b).).

14

3. The Appellant argues that he received ineffective assistance of counsel in several respects. For the reasons that follow, we affirm the trial court's rulings on these claims.

Generally, to prevail on a claim of ineffective assistance,

a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[22] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[23]

Either the performance or the prejudice prong of the ineffectiveness inquiry need not be proven if the defendant fails to prove the other prong.[24]

[22] *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[23] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

[24] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993) ("Although the Supreme Court in *Strickland* discussed the performance component prior to the prejudice component, it acknowledged that a court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one.") (citing

"An appellate court evaluates counsel's performance from counsel's perspective at the time of trial."[25] In other words, "hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim."[26] A trial counsel's tactics and strategic decisions "are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them."[27]

(a) The Appellant contends that he did not receive effective counsel because his trial counsel failed to articulate specific grounds to support his motion for a continuance. We disagree.

As explained in Division 1, supra, although the trial court denied the Appellant's motion for a continuance, the trial court excluded evidence of Sterling's

---

*Strickland*, 466 U. S. at 697)).

[25] *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

[26] *Dority v. State*, 335 Ga. App. 83, 96 (4) (780 SE2d 129) (2015) (citation and punctuation omitted).

[27] *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008) (punctuation and footnote omitted); see *Grier*, 273 Ga. at 365 (4) ("As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel.") (citation and punctuation omitted).

custodial interview and the accompanying written summary. The Appellant has not shown that there is a reasonable likelihood that the outcome of the trial would have been different if the trial court had granted the continuance.[28]

To the extent that the Appellant contends that trial counsel should have interviewed Watts and Sterling in preparation for trial, and attempted to locate an alleged female co-worker of the victim, he failed to present any evidence at the motion for new trial hearing to show what these individuals would have offered that would have changed the outcome of the trial.[29] Thus, trial counsel's representation did not constitute ineffective assistance as to this claim.

(b) The Appellant argues that his trial counsel was deficient in failing to "properly" object to improper character evidence. Specifically, he contends that the evidence of the Appellant's outstanding warrant for shoplifting was subject to the

---

[28] See *Williams v. State*, 231 Ga. App. 123, 124 (1) (497 SE2d 660) (1998) ("A motion for continuance predicated upon a claim of insufficient time to prepare for trial is addressed to the sound discretion of the trial court, and will not be interfered with unless it is clearly shown that the court abused its discretion.") (citation and punctuation omitted).

[29] See *Columbus v. State*, 270 Ga. 658, 664-665 (4) (513 SE2d 498) (1999) (defendant failed to present any evidence at the motion for new trial hearing showing that the failure to subpoena certain witnesses for trial prejudiced his defense).

admissibility requirements set forth in OCGA § 24-4-404 (b). This argument is without merit.

As explained fully in Division 2 (b), supra, the evidence of the Appellant's outstanding warrants was admissible as intrinsic evidence. Consequently, the Appellant's trial counsel cannot be deemed ineffective for failing to properly object to this evidence.[30]

(c) The Appellant argues that he received ineffective assistance based on trial counsel's failure to object to the prosecutor's statement regarding the Appellant's credibility, as well as his failure to seek either a curative instruction or a mistrial. We disagree.

In Georgia, "a witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth."[31] The record shows that, prior to the prosecutor's statement at issue, the detective testified during cross-examination that he found the Appellant to be truthful "[f]or the most part[.]" As the

---

[30] See *McCoy v. State*, 285 Ga. App. 246, 249 (4) (b) (645 SE2d 728) (2007) ("[F]ailure to make a meritless argument does not constitute ineffective assistance of counsel.").

[31] *Mann v. State*, 252 Ga. App. 70, 72 (1) (555 SE2d 527) (2001) (citations and punctuation omitted).

cross-examination continued, trial counsel asked the detective, "did you believe [the Appellant] was telling you the whole truth?" The trial court immediately disallowed the question and told the jury: "It's not this witness's place to comment on the credibility of another witness. . . . It is the jury's province to decide the credibility of the witnesses." Then, during the State's redirect examination of the detective, the prosecutor stated, "[i]f [the Appellant is] mostly truthful, he's not entirely truthful." Trial counsel objected to the statement as "leading[,]" and, after recessing the jury, the trial court heard argument from the parties concerning the objection. Following the recess, the trial court reconvened the trial and sustained trial counsel's objection.

During the motion for new trial hearing, the appellate counsel did not question trial counsel about the objection, or ask why trial counsel did not request a curative instruction or a mistrial due to the prosecutor's statement. In its order denying the motion for new trial, the court noted that trial counsel had objected to the statement and found that "[the Appellant] has not shown that trial counsel's performance was deficient because trial counsel did precisely what [the Appellant] now complains should have been done."

Here, the trial court, sua sponte, instructed the jurors that it was solely their role to determine the credibility of witnesses, an instruction that was also included in

19

the court's charge to the jury.[32] The Appellant has not shown that, had trial counsel

objected based on the inadmissibility of evidence regarding the "credibility of another

witness[,]" or sought a curative instruction, or a mistrial, there was a reasonable

probability that the outcome of the trial would have been different.[33] Consequently,

the Appellant has failed to meet his burden of showing that trial counsel provided

ineffective assistance on this issue.

(d) The Appellant contends that his trial counsel was ineffective for failing to

object and request a mistrial when evidence showed that the Appellant and Sterling

were not in jail together.

The Appellant did not raise the failure of trial counsel to object to this evidence

in the trial court. Therefore, this issue is not properly before this Court and is

waived.[34]

---

[32] See *Bray v. State*, 294 Ga. App. 562, 563 (1) (669 SE2d 509) (2008) ("A jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it.") (citation and punctuation omitted).

[33] See *Robinson*, 277 Ga. at 75-76.

[34] *McGlocklin v. State*, 292 Ga. App. 162, 163 (664 SE2d 552) (2008) ("A defendant must raise all allegations of ineffective assistance of counsel as soon as practicable [and, where] new counsel raises the issue of trial counsel's ineffectiveness on motion for new trial, any ineffective assistance of trial counsel claims not raised at that time are waived.").

Turning to the Appellant's argument that his trial counsel provided ineffective assistance for failing to move for a mistrial, the trial court ruled that evidence that the Appellant was in the hotel room during the robbery was an admission by a party-opponent and "nothing about the highlighted situation required a mistrial in the first place, as the person best equipped to point out the mistaken fact was always the [Appellant, who] sat and allowed the mistake of fact to continue."

"[A] defendant's incriminating statement is admissible when it constitutes an admission against the defendant's penal interest because a *defendant's* declaration against penal interest is the admission of a party-opponent."[35] Consequently, the Appellant's trial counsel cannot be deemed ineffective for failing to move for a mistrial on this issue.

(e) The Appellant contends that he received ineffective assistance because his trial counsel did not request a *Jackson-Denno*[36] hearing. Specifically, the Appellant

---

[35] *Bryant v. State*, 288 Ga. 876, 888 (9) (a) (708 SE2d 362) (2011) (citation and punctuation omitted; emphasis in original); see *Banks v. State*, 244 Ga. App. 191, 192 (1) (c) (535 SE2d 22) (2000) ("Failure to pursue a meritless motion cannot be evidence of ineffective assistance.").

[36] See *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964); *Richardson v. State*, 265 Ga. App. 880, 882 (2) (595 SE2d 678) (2004) ("Where the voluntariness of a confession is questioned on the trial of a criminal case[,] it is necessary to have a separate *Jackson-Denno* hearing as to the voluntariness before

21

argues that his custodial statement was not voluntary, due to pain from injuries he suffered from a K-9 unit while he fled from law enforcement officers following the high speed car chase. According to the Appellant, after he was bitten on both of his legs by the K-9 unit, he "ache[d]" in both legs, had trouble walking, and requested medical attention.

The trial court did not clearly err in finding that the Appellant's injuries were treated on the scene and did not require stitches or hospitalization. Further, "[t]here was no evidence that [the Appellant] was so injured by the K-9's apprehension that he was unable to freely, voluntarily, and intelligently respond to the officer's questions, and [he] gave no testimony during the motion hearing to cast doubt on the voluntariness of his custodial statement."[37]

During the motion hearing, trial counsel testified that he did not request a *Jackson-Denno* hearing because he wanted "the [Appellant's custodial] statement to come in." He further testified that "[the statement] was a calculated risk[;] I wanted the jury to have the full impact of his statement and to see . . . how emotional [the

it is finally presented to the jury. Such hearing, however, is only required if the defendant challenges the voluntariness of the statement and objects to its admission.") (punctuation and footnotes omitted).

[37] (Emphasis omitted.)

Appellant] was getting, because. . . I thought it would humanize him to the jury." This testimony shows that trial counsel made a tactical and strategic choice to use portions of the Appellant's custodial interview, reasoning that it made the Appellant appear emotional about the instant case.[38]

> Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that [the Appellant] and his present counsel disagree with the decisions made by trial counsel does not require a finding that [the Appellant's] original representation was inadequate.[39]

We also find no error in the trial court's decision that the Appellant's custodial statement was freely and voluntarily given.[40] Thus, the Appellant has failed to meet

---

[38] See *Keaton v. State*, 311 Ga. App. 14, 22-23 (6) (a) (714 SE2d 693) (2011) (effective assistance affirmed when defense counsel used reasonable trial tactics and strategy by not objecting to the prosecutor's testimony that the victim cried while she was interviewed by the State).

[39] *Hazelrigs v. State*, 255 Ga. App. 784, 786 (2) (567 SE2d 79) (2002) (punctuation and footnote omitted).

[40] See *Cuvas v. State*, 306 Ga. App. 679, 681 (1) (b) (703 SE2d 116) ( 2010) (defense counsel's failure to request a *Jackson-Denno* hearing not ineffective assistance because the defendant failed to show that her custodial statements were involuntary).

his burden showing that there was a reasonable likelihood that the outcome of the trial would have been different if counsel had requested a *Jackson-Denno* hearing.[41] Accordingly, the Appellant cannot prevail on this alleged error.

(f) The Appellant argues that trial counsel failed to adequately prepare for trial, thus denying him effective counsel. We disagree.

During the motion for new trial hearing, trial counsel testified that he had adequate time to prepare the Appellant's case for trial, that he met with the Appellant "several times[ ]" while preparing the Appellant's defense, and that he "had [his] trial notebook ready." He also testified that the plan prior to trial was for the Appellant not to testify. Trial counsel further testified that he received little notice from the Appellant that he wanted to testify, stating, "after the State rested its case, they brought [the Appellant] out, and he sat next to me. And at that point, I didn't know if he was going to testify or not, and I think it was only after [the trial court] put him to the question and made him give an answer[,] that's when I knew." Trial counsel testified that he told the Appellant the risks of testifying, and "prepped him as [well as he] could, given the time that [he] had."

---

[41] See id.

24

The Appellant testified at the motion for new trial hearing that his trial counsel was not prepared for trial because "[trial counsel] wasn't letting [him] know the evidence that the State was going to [produce at trial,]" because the Appellant did not have the video of his custodial statement or the videos of the custodial interviews of his co-defendants. The Appellant also claims that trial counsel did not adequately cross-examine T. D. to challenge his credibility, review the video of the Appellant's custodial statement, or review the police supplemental reports. "There exists no magic amount of time which a counsel must spend in preparation for trial in order to provide a client with adequate counsel."[42]

In denying the motion for new trial, the trial court did not clearly err in finding that the Appellant "stopped cooperating with trial counsel at some point and was refusing to tell [him] whether [the Appellant] would testify." The trial court also found the Appellant's testimony at the hearing to be "less credible than his former counsel on all disputed issues."

_____

[42] *Fitzpatrick v. State*, 317 Ga. App. 873, 875 (2) (b) (733 SE2d 46) (2012) (punctuation and footnote omitted).

In the present action, "even if trial counsel was deficient in some respects, there is no reasonable probability that, but for those deficiencies, the outcome of [the Appellant's] trial would have been different[.]"[43]

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[43] *Lanham*, 345 Ga. App. at 665 (1) (f) (citation and punctuation omitted); see *State v. Worsley*, 293 Ga. 315, 323 (3) (745 SE2d 617) (2013) ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.") (citation and punctuation omitted); *Green v. State*, 218 Ga. App. 648, 651 (3) (b) (463 SE2d 133) (1995) ("It is important for appellate judges to remember that a defendant is entitled to a fair trial but not a perfect one, for there are no perfect trials.") (citations and punctuation omitted).